301 Ga. 171
FINAL COPY

S17A0465. RICKS v. THE STATE.

NAHMIAS, Justice.

Otis Ricks has been indicted along with three other men for murder, armed robbery, criminal street gang activity, and related crimes in connection with the shooting death of Vanessa Thrasher at a lounge in Atlanta on August 16, 2012. The State has given notice of its intent to seek the death penalty against Ricks and at least one of his co-defendants, Demario Carman.[1] The defendants' cases were severed for trial, although some of Ricks's and Carman's pretrial proceedings have been conducted jointly and the October 31, 2013 hearing discussed below was conducted jointly with Carman and five defendants from unrelated cases.

During the pretrial proceedings, Carman filed a motion asking the trial court to issue an order declaring Fulton County's method of selecting trial jurors

---

[1] Carman previously appealed the denial of his claim of double jeopardy following a mistrial. On August 4, 2016, this Court remanded that case to the trial court with direction to ensure that the entire pretrial record in Carman's case was assembled and transmitted here. See Carman v. State, Case No. S16A1002.

to be in violation of this Court's Jury Composition Rule and directing that his trial jury be selected in a manner not violating the Rule. The court held an evidentiary hearing on October 31, 2013, in which Ricks participated and was allowed to orally adopt Carman's motion. The trial court denied the motion on June 25, 2014. Ricks filed a written motion seeking the same relief on February 6, 2015. Because a new jury list had been created since the original order on the matter, the court conducted another evidentiary hearing on June 1, 2015, and then denied the motion on December 30, 2015.

The trial court had denied Ricks's initial request for interim review on September 30, 2014. On December 31, 2015, however, the court filed an order authorizing his application to this Court for interim review. See OCGA §§ 17-10-35.1, 17-10-35.2; UAP II (F), (H). The application was docketed here on September 8, 2016, following a lengthy delay in the transmission of the complete pretrial record by the trial court clerk. This Court granted the application on October 24, 2016, and directed the parties to address the following question:

> Did the trial court err by denying Ricks's claim that the list from which Fulton County jurors are summoned is produced in a manner that violates the Jury Composition Rule?

2

For the reasons discussed below, we conclude that the answer to this question is yes, and we therefore reverse the trial court's rulings to the contrary and remand the case with direction that the court ensure that Ricks's trial jury is selected in a manner that complies with the Jury Composition Rule.[2]

## The Jury Composition Reform Act

1.      This Court adopted the Jury Composition Rule ("the Rule") to effectuate the Jury Composition Reform Act of 2011 ("the Act"), Ga. L. 2011, p. 59. The Act was the product of a seven-year effort by this Court's Jury Composition Committee, led by then-Justice Hugh P. Thompson, to develop recommended changes to OCGA § 15-12-40.1, related statutes, and the Unified Appeal Procedure used in death penalty cases in order to provide a modern method of preparing the lists from which local courts select grand juries and trial juries. See generally Catherine Fitch, Jury Composition Reform, 18 Ga. Bar J.

---

[2] We note that Ricks has filed a motion in the trial court requesting a pretrial hearing on allegedly objectionable victim impact testimony proposed by the State, but no such hearing has been held yet and no order has been entered on this issue. Although we did not direct that this issue be addressed in this interim review, we remind the trial court that a pretrial hearing on proposed victim impact testimony, while not mandated under current law, is highly recommended by this Court. See Turner v. State, 268 Ga. 213, 214-215 (486 SE2d 839) (1997). See also Martin v. State, 298 Ga. 259, 284 (779 SE2d 342) (2015) (describing objectionable victim impact testimony); Bryant v. State, 288 Ga. 876, 896-898 (708 SE2d 362) (2011) (reversing death sentence due to admission of improper victim impact testimony).

13, 13 (Oct. 2012). The Act replaced the previous jury composition process, which allowed each of Georgia's 159 counties to control its own jury lists. Driven largely by a prior version of the Unified Appeal Procedure, under the old process each county utilized so-called "forced balancing" in an attempt to make its jury lists include men and women and certain identifiable racial groups in proportion to the county's population as determined by the most recent decennial census. See Williams v. State, 287 Ga. 735, 735-736 (699 SE2d 25) (2010), superseded by the Act as noted in Ellington v. State, 292 Ga. 109, 118 n. 2 (735 SE2d 736) (2012). In some counties with fast-changing demographics, the process left those proportions in the jury pool significantly out of line by the end of the decade. See id. at 738-741 (Melton, J., dissenting) (criticizing the disparities authorized by the old process). See also Fitch, supra, at 13-14, 16-18 (describing forced balancing and its problems).

The 2011 Act was designed to replace that jury composition system with a consistent methodology that produces lists of eligible jurors that are updated annually for each county and more accurately reflect each county's jury-eligible population. To this end, the Act gave centralized responsibility for preparing each county's master jury list to the Council of Superior Court Clerks ("the

4

Clerks Council"). See Ga. L. 2011, p. 59, §§ 1-5, 1-16 (amending OCGA §§ 15-12-1 and 15-12-40.1). The Clerks Council is required to provide each county with a "county master jury list" on July 1 of each year, and each county's jury clerk is directed to "choose a random list of persons from the county master jury list to comprise the venire" for each case to be tried. Id. § 1-16 (codified as amended as OCGA § 15-12-40.1 (d), (g)).

For use in compiling these lists of potential jurors, the Act directs the Clerks Council to obtain voter registration records from the Secretary of State and driver's license and identification card records from the Department of Driver Services ("DDS"); the Act also directs the Clerks Council to obtain records on individuals who are ineligible for jury service, including certain records regarding mentally incompetent persons and convicted felons who have not had their civil rights restored. See Ga. L. 2011, p. 59 § 1-16 (codified as amended as OCGA § 15-12-40.1 (b), (c)). In 2014, the Act was amended to adjust and supplement the sources of information on eligible and ineligible jurors, including adding records of deaths and of persons who are not citizens. See Ga. L. 2014, p. 451, § 8 (amending OCGA § 15-12-40.1 (b), (c), (e), and (f)). The Act was amended again in 2015 in a manner not relevant here. See

5

Ga. L. 2015, p. 422, § 5-18. Additional amendments regarding, among other things, the way in which the Clerks Council obtains data about convicted felons and mentally incompetent persons, and the adoption of a system for assigning a unique identifier for each entry on the master jury list, were enacted during the 2017 legislative session and will take effect on July 1, 2017. See Senate Bill 95 (Ga. L. 2017, p. __) ("SB 95").

The Jury Composition Rule

2. The detailed methodology used to convert the information gathered about potential jurors into jury lists is set forth in the Jury Composition Rule promulgated by this Court. The initial version of the Rule, which was drafted alongside the Act by the Jury Composition Committee, was issued on December 8, 2011, with an effective date of July 1, 2012. On February 13, 2013, this Court issued two orders regarding the Rule. First, because of an excessive number of duplicate records in the initial set of master jury lists provided to the counties by the Clerks Council in July 2012, the Court issued a temporary order revising parts of the Rule, which would be in effect only from the date of the order until June 30, 2013. This temporary revision provided specific procedures by which county officials could screen the lists provided by the Clerks Council

6

to eliminate presumed duplicates, with those officials required to report the presumed duplicates to the Council. Second, the Court issued an order that replaced the entire Jury Composition Rule effective July 1, 2013. The Court amended the Rule again on February 21, 2014, in a manner not relevant here.

Because this case is about alleged non-compliance with the Jury Composition Rule, we will detail the pertinent parts of the current version of the Rule, which have been in effect since July 2013.[3] The body of the Rule includes the following provisions:

> 1. Purpose. The purpose of the rule is to set reasonable standards for the preparation, dissemination and improvement of inclusive statewide and county master jury lists.
> 2. Business Rules. The statewide and county master jury lists shall be compiled substantially in accordance with the business rules set forth in Appendix A.
> 3. Inclusiveness.
> > a. Each county master jury list should be no less than 85% inclusive of the number of persons in the county population age 18 years or older as derived from the most recent decennial census or county population estimate (Table B01001 as of the date of this rule) from United States Census Bureau ("USCB") for the calendar year when the list is generated. The calculation shall be made by dividing the number of

---

[3] The full text of the current Rule and its Appendix A may be found on this Court's website. See http://www.gasupreme.us/wp-content/uploads/2015/06/JURY-COMPOSITION-RULE---02_21_14.pdf.

7

persons in the county master list by the county population age 18 years or older according to the applicable census data.

. . .

4.  Certification.
    a.  Upon completion of the statewide and county master jury lists, the Council of Superior Court Clerks or its list vendor shall certify to the Supreme Court that it has complied with the business rules for preparation of the master jury lists and that the county master jury lists do or do not meet the inclusiveness threshold.

. . .

6.  Local clerks and jury commissioners shall not add or delete names from the county master jury list, but may excuse, defer, or inactivate names of jurors known to be ineligible or incompetent to serve pursuant to OCGA § 15-12-1.1.  The clerk of the board of jury commissioners shall maintain a list of jurors excused, deferred or inactiv[ated] who are not part of the eligible juror array derived from the county master jury list.
7.  All other issues of jury management shall be as authorized by law or by local court order.

The business rules set forth in Appendix A of the Rule begin by explaining that "the three [primary] sources of data for the creation of the statewide and county master jury lists" are the records from the Department of Driver Services, the Secretary of State's voter registration records, and the statewide master jury list from the previous year.  Appendix A then directs that

8

"[t]he following record sources shall be used as sources of data to be applied to purge persons from the lists":  death certificates from the Department of Public Health; a list of persons who have been convicted of felonies and who have not had their civil rights restored; a list provided by the Secretary of State of persons declared to be mentally incompetent; and "County Exception Lists."

Regarding the county exception lists, Appendix A says:

A request shall be made of each Superior Court Clerk or county jury clerk for an electronic listing of all persons within such county who have been permanently excused or inactivated from jury service as follows:
>   (a)   Persons who have been permanently excused or inactivated due to mental and/or physical disability;
>   (b)   Persons who are 70 years of age or older and who have requested and been granted permanent excusals or inactivation from jury service as the result of their age;
>   (c)   Persons who have been identified by the clerk as being deceased;
>   (d)   Persons who have been identified by the clerk as having been convicted of a felony and who have not had their civil rights restored;
>   (e)   Persons who have been identified by the clerk as having been declared mentally incompetent by Order of a court;
>   (f)   Persons who have been determined by the clerk as having an address which is undeliverable after reasonable efforts have been made by the clerk to locate such person;
>   (g)   Persons who have been identified by the clerk as not being a resident of the county; and
>   (h)   Persons who have been identified by the clerk as not being a citizen of the United States.

9

The county exception lists shall include the data elements specified by the [Clerks Council]. These listings shall be submitted by annual deadlines as determined by the Council for use in compiling the master jury lists.

"TASK ONE" of Appendix A instructs the Clerks Council on the "Removal of Ineligible Persons from Primary Sources." Under the subheading "County Exception Lists," there are instructions to purge names from the statewide jury list in each of the categories listed above based on the lists from the county clerks, except for categories (f) and (g) involving persons with undeliverable addresses and persons identified as not being residents of the county. (As noted below, names in those two categories are purged from *individual* county master lists based on the county exception lists in "TASK EIGHT.") This purging is to be done using "deterministic matching methods" and six specific data fields.[4] TASK ONE concludes with the following statement: "This provision shall not limit the authority of the court to excuse or inactivate such persons locally pursuant to Paragraph 6 of the Jury Composition Rule."

---

[4] The six data fields are county of residence, last name, first four characters of the first given name, first character of the second given name (middle name), sex, and date of birth.

Paragraph 6 of the Rule says: "Local clerks and jury commissioners shall not add or delete names from the county master jury list, but may excuse, defer, or inactivate names of jurors known to be ineligible or incompetent to serve pursuant to OCGA § 15-12-1.1." In turn, that statute sets forth a list of reasons for which a person may be temporarily "excused or deferred from jury duty" by the court or its designee, including being "engaged . . . in work necessary to the public health, safety, or good order" or showing "other good cause" for exemption; being a full-time post-secondary student (during the time the student is enrolled and taking classes or exams); being a primary caregiver of a young child or a disabled person; being a primary teacher in a home study program (during the period the person is teaching); and being a military service member or a service member's spouse under specified circumstances. OCGA § 15-12-1.1 (a), (c). Persons age 70 or older may be excused and "inactivate[d]" permanently, OCGA § 15-12-1.1 (b), as may "permanently mentally or physically disabled persons," OCGA § 15-12-1.1 (a) (1). This set of reasons was amended in 2011 as part of the Jury Composition Reform Act. See Ga. L. 2011, p. 59, § 1-5.

Under the heading "TASK TWO" in Appendix A, the Jury Composition

11

Rule directs the Clerks Council to purge certain records from the Department of Driver Services source data according to five data filter rules and then to remove records found to be duplicates "with a probability level of 90% or higher" within the DDS and voter records using the highly specific "Probability Linking Methods" ("PLM") described later in the Rule, including particular PLM model parameters of four "blocking fields" and six "matching fields."

"TASK THREE" and "TASK FOUR" instruct the Clerks Council, in conjunction with a National Change of Address ("NCOA") vendor, to standardize and correct addresses, check them against the NCOA database, and purge those addresses that are undeliverable following detailed protocols. The NCOA vendor "cannot outsource any or part of the DDS or voter file matching to other companies or entities."

"TASK FIVE" directs the Clerks Council to remove duplicates in the combined list of purged DDS and purged voter records using particular Probability Linking Methods. The Rule notes that "[u]nlike the deterministic approach which requires an exact match on some or all fields, Probability Records Linkage . . . methods use the statistical properties of a record pair to calculate the probability that the records apply to the same person." That

12

concept is then further explained, and the Rule specifies: "The PLM methods to be used rely on the Felligi-Sunter (1969) framework to compute odds ratios (see Section 2.1 in the attached article) and a limited Bayesian Model (see Section 3.1). The matching methodology does not apply the full Bayesian Model as described in Section 4.1." Records are to be purged by the Clerks Council using these methods only if they are identified as duplicates with a probability level of 90% or higher, again using four specific blocking and six specific matching fields.

Finally, under "TASK SIX" and "TASK EIGHT," the Clerks Council is instructed to purge its list using state records of deaths, of convicted felons, and of mentally incompetent persons, and to purge individual county lists of persons reported by those counties' clerks on the county exception lists as having an undeliverable address or not being a resident of the county.[5]

The result of this elaborate, multi-step process is a "Statewide Master Jury List" and "County Master Jury Lists" for all 159 counties. Each county receives its county master jury list annually on July 1 for use to select venires pursuant

---

[5] "TASK SEVEN" deals with the assignment of a "Statewide Juror Number" to each juror record and the comparison of the records on the list being created to the previous year's statewide master jury list. SB 95 may alter this process when it takes effect on July 1, 2017.

13

to OCGA § 15-12-40.1 (g).

### The Evidence Presented in the Trial Court

3.    As mentioned previously, the trial court held two evidentiary hearings on Ricks's challenge to the composition of Fulton County juries. The testimony at those hearings regarding how the county actually constructs its jury lists was uncertain and incomplete. The county's jury clerk and its court administrator were not aware of the details of the county's computerized jury selection system, which was designed by the county's technology vendor, a Canadian company called Courthouse Technologies. And the vendor was not fully cooperative in the parties' pre-hearing investigations and then provided a witness who also appeared to have limited knowledge of the exact processes the vendor has used. Nevertheless, the record is sufficient for us to reach the conclusions necessary to decide this appeal.

(a)    The October 2013 Hearing:    The first evidentiary hearing was conducted on October 31, 2013, and addressed the county master jury list provided to Fulton County by the Clerks Council on July 1, 2013. Although that list has been superseded by subsequent lists provided annually by the Council, the evidence presented at the hearing on the 2013 list reveals the

flawed process that the county still employs. Since 2012, the Clerks Council has provided Fulton County with a county master jury list of eligible jurors on July 1 of each year, and the Council's executive director confirmed in his testimony that the Council has followed the Jury Composition Rule's mandates, including removal of names based on data regarding felons and deceased persons and based on the counties' exception lists; detection of duplicates using the detailed algorithm provided in the Rule; and detection of unusable or changed addresses through the National Change of Address database.[6] However, rather than choosing venires from the county master jury list that the Clerks Council provides, as OCGA § 15-12-40.1 (g) directs, Fulton County produces its own jury list using a complicated process developed by its vendor based on outdated guidelines set forth in a local jury management order issued by the chief judge of the Superior Court of Fulton County.

Two local orders appear in the record; the first, which was filed on March 12, 2013, while the temporary version of the Rule was in effect, was presented at the October 2013 hearing. This order acknowledged that "[o]n February 13,

_____

[6] The record includes no details about the county exception lists that Fulton County has submitted.

15

2013, the Supreme Court of Georgia issued two Jury Composition Rules," one of which was only temporary and would be replaced by the other on July 1, 2013. The local order correctly set forth the process for identifying duplicates at the county level that was authorized in this Court's temporary version of the Rule, and the order said: "On July 1, 2013, and thereafter, the [local] Court will perform maintenance on Master Jury Lists in compliance with the Supreme Court of Georgia Jury Composition Rule inclusive of all appendixes and attachments effective July 1, 2013 until another rule is issued." However, the local order then said that, "[o]nce a duplicate record has successfully been identified and merged" — apparently based on the local process that was only temporarily authorized — "the jury management vendor shall be permitted to promote the most recent and complete data as the record of use." The order further said: "Each record in the Master Jury List which has been provided by the [Clerks Council] shall be processed through the National Change of Address Service (NCOA) prior to being mailed."

The order also said:

The Clerk may perform local maintenance of the Master Lists by notation or flagging of jurors who have been excused, deferred or inactivated as provided by law or this Order. The reason for a

16

permanent inactivation shall be included as a notation or flag. In the maintenance of the lists no names shall be actually removed or deleted from the lists.

The reasons provided in the order for permanent inactivation included being over 70 years old and having requested inactivation, being a non-citizen, not having attained the age of 18, being a convicted felon whose civil rights have not been restored, having been declared mentally incompetent, being a non-resident of the county, being deceased, and having a permanent medical condition that prevents jury service. Testimony at the hearing showed that Fulton County's vendor was provided this March 2013 local order but — remarkably — was not given a copy of the version of the Jury Composition Rule that took effect on July 1, 2013, and that remains in pertinent part effective today.

Other evidence at the October 2013 hearing showed that the vendor maintains what it describes as "legacy data," including juror names compiled over at least 10 years with various codes associated with many (but not all) of the names. The codes indicate that jurors have died, have undeliverable addresses, have filed affidavits to be removed for being at least 70 years old, are mentally incompetent, are convicted felons, or are not citizens. As to the county

17

master jury list provided in July 2013, the vendor began with the 790,006 names on the Clerks Council's list; deleted 493 names, apparently because they were deemed duplicates of 493 other names on the Council's list; and added 1,141 names from the "legacy data."[7] The resulting new list contained 790,654 names.

From this new list, the vendor "inactivated" 64,190 names for reasons clearly not addressed by OCGA § 15-12-1.1 — 38,438 that were deemed duplicates by the vendor's system; 24,554 marked with a code indicating an undeliverable address; and 1,198 marked with a code indicating a duplicate and also an undeliverable address. There was no evidence that, in identifying supposedly duplicate juror records, the vendor followed the methodology the Rule requires. To the contrary, when asked if the designers of the vendor's system had been given specifications for how to identify duplicates, the vendor's representative replied: "If they need an instruction on how to do it, then they're not a computer scientist. It's similar to a carpenter. You don't have

---

[7] The vendor's representative testified that names were added, contrary to the 2013 local jury management order, when the vendor's system obtained supposedly correct addresses through the National Change of Address database for some names in the "legacy data" that had previously been inactivated based on an undeliverable address. The vendor's representative testified that there were 1,085 names added, while Ricks's expert testified that there were 1,141. The small difference between those numbers is not material to our analysis.

18

to tell a carpenter how to build a wall. . . . The same thing with programming."[8]

The vendor also inactivated an additional 67,416 names that were marked with a single code denoting either an undeliverable address or an unspecified reason within the general category of "other permanent disqualifications."  To the extent that the names the vendor inactivated under this general category were based on permanent excuses or inactivations pursuant to OCGA § 15-12-1.1 made before the last submission of the county exception list, which the Rule has required the county to submit to the Clerks Council every March, the same names already should have been purged from the Council's county master jury list provided to the county on the following July 1; the same is true of names inactivated for having an undeliverable address.  In sum, having begun with a list from the Clerks Council of 790,006 names, the vendor's final 2013 list contained only 659,048 active names from which the county actually selected jurors, meaning that at least 130,958 names —  over 16% of the total —  had been effectively removed from the Council's county master jury list.

The hearing evidence indicated that the Clerks Council's 2013 list for

---

[8] In our experience, it is quite useful for a carpenter to know the dimensions and other specifications of a wall that someone else asks him to build.

Fulton County was 114% inclusive of the county's voting age population as determined by the 2010 decennial census. As to that issue, Ricks's expert remarked, "There are other reasons we know why the list is bigger than the population," but unfortunately, neither party asked for an explanation of what those other reasons were. The county's final 2013 list produced by its vendor was 94% inclusive as measured against the decennial census. Both lists exceeded the 85% inclusiveness threshold in Paragraph 3 (a) of the Jury Composition Rule.[9]

Two other interesting facts emerged from the hearing on the county's 2013 juror list. First, Ricks's expert spot-checked four names of eligible jurors — his and his three brothers'. Three of the four names appeared twice in the

___

[9] It is clear from the record that the Census Bureau population number used in these calculations came from the 2010 decennial census rather than from the Census Bureau's estimate of Fulton County's 2012 population that was available when the July 2013 county master jury list was being compiled. By our calculation, the inclusiveness percentage of the Council's list was only about 105% when compared to the voting age population in that census estimate. See JCR ¶ 3 (a) ("Each county master jury list should be no less than 85% inclusive of the number of persons in the county population age 18 years or older as derived from *the most recent decennial census or county population estimate* (Table B01001 as of the date of this rule) from the United States Census Bureau ('USCB') for the calendar year when the list is generated. The calculation shall be made by dividing the number of persons in the county master list by the county population age 18 years or older *according to the applicable census data*." (emphasis added)). The inclusiveness of the county's final list was only about 88% when compared to the 2012 population estimate – barely above the 85% inclusiveness threshold that triggers special scrutiny under the Rule. See JCR ¶ 3 (b) and (c) (discussing special steps that the Clerks Council and the county's chief judge must take to ensure constitutionally valid jury lists if the inclusiveness is under 85%).

20

county's final list — once from the Clerks Council's list and once from the county's "legacy data" — but *both* of those entries were marked with codes that inactivated them, meaning that those three eligible individuals were removed from possible jury selection. However, there was little evidence indicating the cause of these errors, nor was there any evidence regarding whether the errors could be extrapolated to the entire list.[10] Second, the hearing evidence showed that the vendor's system allows Fulton County to account for prior jury service from year to year so that individuals are not summoned more frequently than allowed under the local court order (i.e., once every 18 months), and the system also allows the county to track and manage the payment of jurors for their service. As we discuss below, these are matters appropriately addressed by a local jury management order.

(b) The June 2015 Hearing: The hearing held on June 1, 2015, concerned the county master jury list provided to Fulton County by the Clerks Council on July 1, 2014. The State presented the second local jury management

_____

[10] To the extent that the vendor's representative sought to explain the errors in this sample, his testimony simply reinforces our conclusion that the vendor's system, regardless of its precise mechanics, improperly rejects names recently screened by the Clerks Council based on information in the county's "legacy data" that conflicts with the Council's results.

21

order that appears in the record. This order, which was filed on November 24, 2014, gave instructions on purging juror records similar to those in the March 2013 local order described above, saying:

> As a condition of maintenance, the Jury Clerk shall be permitted to merge duplicate records utilizing the criteria set forth by the Supreme Court of Georgia in its rules to create the Statewide County Master Jury List. For the purpose of local maintenance, a duplicate shall be identified using the following criteria from the Supreme Court Rule:
> i. A person is listed more than once with the exact first, middle and last names;
> ii. A person is listed with similar names and an identical driver's license or voter registration number; or
> iii. Two records are identified using the matching rules for death certificates. Use Department of Driver Services address-change date and/or date of license issue and compare those dates to the address and voter date-of-last-contact date. The source record with the most current dates will dictate which address is used as the selected address.

> If such criteria are not met as a condition to merge, the name shall remain in the system as a separate and distinct record.

Like the March 2013 local order, the method prescribed for merging presumed duplicates in the November 2014 order was drawn verbatim from this Court's temporary version of the Rule, which had expired on June 30, 2013. The 2013 order had expressly recognized that this local authority was based on the version of the Rule "effective February 13, 2013 up through June 30, 2013,"

22

and went on to say that "[o]n July 1, 2013, and thereafter, the [local] Court will perform maintenance on the Master Jury List in compliance with the Supreme Court of Georgia Jury Composition Rule inclusive of all appendixes and attachment effective July 1, 2013 until another rule is issued." The 2014 order inexplicably deleted those limitations and indeed did not acknowledge the existence of the new version of the Jury Composition Rule, which removed the temporary authority for local merging of duplicates and which prescribed — for the Clerks Council to apply — a method for identifying and purging duplicates that was substantially different.

The 2014 order then directed: "Once a duplicate record has successfully been identified and merged, the jury management vendor shall be permitted to promote the most recent and complete data as the record of use." Finally, the jury clerk was directed by the 2014 order to screen the county master jury list using the National Change of Address database and to "perform local maintenance of the County Master Jury List, by notation or flagging of jurors who have been excused, deferred or inactivated as provided in the Jury Management System."

At the June 2015 hearing, no representative from the county's vendor

23

testified. Ricks's expert gave testimony about the 2014 jury list that was similar to his testimony regarding the 2013 list. He again explained that the county's vendor merged the county master jury list provided by the Clerks Council with the county's own "legacy data." His analysis showed that the vendor's process resulted in the addition of 1,001 active names to the Council's list, and the inactivation of 155,208 names that appeared on the Council's list. The specified reasons for 12,080 of these inactivations were being a convicted felon whose civil rights have not been restored, being a non-citizen, being deceased, having a permanent mental or physical disability, being 70 years old or older, having been declared mentally incompetent, not being a resident of the county, being a first responder or an appointed government official, having felony charges pending, being unable to speak or understand English, and being under 18 years old. The inactivations also included 8,000 names for being duplicates; 65,351 names for being among the "permanent carry over" names in the "legacy data"; and 69,777 names "for reasons that include an Undeliverable Address."

The record is silent regarding the specific reasons that the 65,351 names were classified as "permanent carry over" and warranted inactivation even at the

time they were so labeled.[11]  And Ricks's expert testified that he was unable to ever determine why the additional 69,777 names had been permanently inactivated, other than because some unknown number of them supposedly had undeliverable addresses.  When the trial court asked one of the prosecutors about the 69,777 names, she confirmed that the county's vendor had failed to respond to a request for such information.

Ricks's expert also checked his name and the name of one of his brothers in the county's final 2014 list.  As with the 2013 list, both names appeared twice on the list, once from the Clerks Council's list and once from the county's "legacy data," and again both entries for each name had been inactivated, removing those two eligible jurors from potential selection to serve for no apparent lawful reason.

Having begun this time with a county master jury list of 871,726 names from the Clerks Council, the final list produced by the vendor contained 717,519 active names —  a net reduction of 154,207 names or more than 17%.  The hearing evidence indicated that the Council's 2014 list was 123% inclusive of

---

[11] The "permanent carry over" label as used in reference to the 2014 list seems to be the same as the "other permanent disqualifications" label used in reference to the 2013 list, but no evidence directly makes that connection.

the county's voting age population compared to the 2010 decennial census, and the vendor's final list was 102% inclusive when measured the same way; however, as at the first hearing, no one followed up when Ricks's expert testified that "there are other reasons" to explain the overage beyond the presence of duplicates.[12] The expert also testified that each of the 15 other counties that he has investigated use the annual county master jury list provided by the Clerks Council without the sort of local manipulation described above.[13]

The Trial Court's Orders

4. The trial court filed two substantive orders addressing Ricks's challenge to Fulton County's method of creating its jury lists.

(a) The June 2014 Order: The first order, which was filed on June 25, 2014, addressed the jury list created by Fulton County's vendor following the receipt of the Clerks Council's county master jury list on July 1, 2013. The trial court noted that the Council's 2013 list was certified as being 114% inclusive,

---

[12] As with the 2013 jury lists, the record shows that these calculations were based on the 2010 decennial census rather than the most recent annual census estimate. Calculated using the census estimate of Fulton County's 2013 voting age population, which was available before July 2014, the Clerks Council's list was about 116% inclusive, and the vendor's list was about 95% inclusive.

[13] In light of our judgment in this case, Fulton County may find it worthwhile to consult with jury officials in some of these other counties, which include at least one neighboring county (DeKalb) that has a similarly large and mobile population.

meaning that the list contained more names than the total age-eligible population of Fulton County as determined by the Census Bureau.[14] The court also acknowledged that the Jury Composition Rule "prohibits counties from adding or deleting names from the master list [provided by the Clerks Council] to ensure that the principles relied upon to achieve an inclusive jury list function properly and are not tampered with at the local level." The court noted, however, the provision in Paragraph 7 of the Rule providing that "[a]ll other issues of local jury management shall be as authorized by law or by local court order."

The trial court then reviewed the March 12, 2013 local jury management order and said:

> As part of its master list maintenance protocol the Fulton County management order authorizes the merging of duplicate records and promotion of the "most recent and complete" record as the record of use. The undisputed evidence is that, even with the merger, purging and duplication identification procedures employed at the state level prior to distribution of county master lists, the lists nevertheless contain multiple records for the same potential juror for various reasons. The Fulton County management order addresses that reality by authorizing additional duplication identification procedures. The method of duplicate identification

---

[14] As discussed in footnote 9 above, the record indicates that this calculation was based on the 2010 decennial census rather than the most recent annual census estimate.

specified in the order is based upon the use of criteria drawn from the Supreme Court Jury Composition Rule and its appendixes.

The core of the defense argument for invalidation of the 2013 master list is that identification and merging of records at the county level constitutes the "deletion" of names from the master jury list. The Court is unpersuaded. Despite the efforts at the state level, the master list certification of inclusiveness for Fulton County reflects a level of inclusivity that exceeds the county's entire jury eligible population. That fact is clear evidence that the adoption by the County of additional measures to address duplication of records was appropriate. The records merge process employed by Fulton County does not authorize the removal of names from the master jury list – that is the removal of the identifiers of potential jurors. Rather, it relies upon recognized methods and rules of statistical probability to identify duplicate identifiers of the same juror. The Court does not find the merging of duplicative identifiers appearing on the master list for the purpose of reducing the probability of the same potential juror being summoned multiple times to be the equivalent of the prohibited act of deleting names from the master list. The purpose of the master list is not to maintain names for the sake of names; but to provide a source list for a fair cross section of actual persons to serve on juries. The Court finds that the merger procedure adopted by Fulton County falls within its authority to adopt measures to manage its master jury list.

The trial court concluded that "the [jury] management processes adopted by the County do not violate either the letter or spirit of the jury composition rule," although the court ordered the correction of the improper addition of 1,000-plus names that did not appear on the Clerks Council's list.[15]

---

[15] The trial court also concluded that the use of Fulton County's jury list would not violate Sixth Amendment standards. Ricks does not raise any constitutional challenge in this appeal.

(b) The December 2015 Order: The trial court's second substantive order, which was filed on December 30, 2015, addressed the evidence presented at the June 2015 hearing and the jury list created by the county's vendor after receipt of the master county jury list from the Clerks Council on July 1, 2014. Although the Council had provided another county master jury list on July 1, 2015, which was after the last evidentiary hearing, the court addressed Ricks's core claim, explaining:

> While the [Council] issues a new jury list annually, the issues raised by [Ricks] go to the standard jury management protocol employed by Fulton County. Because the issues raised by [Ricks] are of a recurring nature the Court finds that addressing the merits of the current motion is appropriate.[16]

---

[16] As described in Division 3 above, the evidence in the record is focused on the jury lists provided to Fulton County by the Clerks Council and then manipulated by the county's vendor in 2013 and 2014. New lists have been provided in 2015 and 2016, and another will be provided again before Ricks's trial, assuming his potential jurors are summoned after July 1, 2017. However, as the trial court found in its order, "the issues raised by [Ricks] are of a recurring nature." Although the pertinent numbers have changed somewhat from year to year and will continue to change, the core of Ricks's claim concerns the *process* that Fulton County uses to develop its jury lists. The record supports the trial court's finding that the county's process will not change significantly (absent judicial intercession), and judicial review of any year's jury list, including appeal, is unlikely to be concluded before the next jury list is developed. We note that both parties share this view. Thus, Ricks's core claim is a matter "capable of repetition yet evading review." Owens v. Hill, 295 Ga. 302, 305 (758 SE2d 794) (2014) (applying an exception to the mootness doctrine because the lethal injection drugs possessed by the Warden would expire before this Court would decide an appeal regarding those drugs, where the parties agreed that the same contested procedure for obtaining such drugs would be followed in the future). See also Hopkins v. Hamby Corp., 273 Ga. 19, 19 (538 SE2d 37) (2000) (noting an exception to the mootness doctrine where there is "an issue of significant public concern" that will likely recur and yet evade review). We therefore conclude that Ricks's core claim is not moot on appeal.

29

The trial court then reasoned much as it had in its previous order:

> Fulton County has entered a jury management order as contemplated by the Jury Composition Rule. The management order provides that the jury clerk will not add or delete names from the [Clerks Council's] County Master Jury List. The jury clerk does, however, have the authority to defer, excuse and inactivate jurors. See OCGA [§] 15-12-1.1. Jurors are inactivated by flagging the person's name and identifying information. A juror name that is flagged on the County Master Jury List is exempt from being selected for jury service. Jurors are flagged if they are statutorily ineligible or incompetent to serve or if they request inactivation pursuant to OCGA [§] 15-12-1.1. Among other bases for inactivation are a determination that a name on the master jury list is a duplicate of another name on the list or the return of a jury summons as undeliverable by the United States Postal Service.
>
> Jury clerks are authorized to manage and maintain master jury source lists. Maintenance of the master jury list includes flagging excused, deferred and inactivated jurors. No names are, however, to be added or removed from the list. Maintenance also includes merging duplicate records using the criteria established for creation of the statewide county master jury list.

The trial court noted that the "overinclusion percentage was reduced from 123% [on the Clerks Council's 2014 list] to 102% through the jury management protocols employed by the County."[17] The court concluded that the Jury Composition Rule's provision for local jury management orders gives

---

[17] We again note that these calculations were based on the 2010 decennial census rather than the most recent census estimate. See footnote 12 above.

30

"flexibility" to counties like Fulton with a "large and fluid population," including "flagging undeliverable summons [sic], duplicate listings, merging records and correlating annual master lists with historical legacy data files." The trial court again concluded that Ricks had failed to show any violation of the Rule (or any constitutional violation).

Analysis

5. As explained in more detail in Divisions 1 and 2 above, OCGA § 15-12-40.1 (d) and the Jury Composition Rule issued by this Court direct that the Clerks Council is responsible for providing each county in Georgia with a county master jury list every July 1 that is developed from DDS and voter registration records and is already purged of names with undeliverable addresses as determined through detailed protocols using the National Change of Address database, purged of duplicates using a very specific statistical process, and purged of convicted felons and mentally incompetent persons as identified through state records. The Rule further directs the Clerks Council to purge names contained in the county exception list that each county provides in March of each year, which includes records of persons who have been permanently excused or inactivated by the local court due to a mental or physical disability;

31

persons over 70 who have requested permanent excusal; and persons identified by the local jury clerk as deceased, as convicted felons whose civil rights have not been restored, as individuals formally declared to be mentally incompetent, as having undeliverable addresses after reasonable efforts to locate such persons, as non-residents of the county, or as non-citizens.

Thus, the Clerks Council has the duty and authority to purge — using strictly defined protocols — names from its list based on both its own use of state and national records and the annual input of the local jury clerks based on the information that those clerks gather year by year as a result of using the Council's county master jury lists. We understand the specific delegation of this duty to the Clerks Council to preclude counties from exercising the same authority. See OCGA § 15-12-40.1 (d), (g) ("[E]ach [county jury] clerk shall obtain its county master jury list from the council. . . . [T]he clerk shall choose a random list of persons from the county master jury list to comprise the venire. . . ."). See also JCR ¶ 6 ("Local clerks and jury commissioners shall not add or delete names from the county master jury list. . . ."). The record shows that Fulton County has violated this precept in numerous ways.

(a) The county's first clear violation of the Jury Composition Rule is

32

allowing its vendor to add names from its so-called "legacy data" to the county master jury lists provided by the Clerks Council — more than 1,000 names in both 2013 and 2014. In its first order, the trial court correctly identified this violation as to the county's 2013 list and directed that it be rectified. Although a similar violation occurred as to the county's 2014 list, the trial court's second order mentioned the problem only in passing and did not direct that it be rectified.

(b) Fulton County's second clear violation of the Rule results from its vendor's use of the county's "legacy data" to remove tens of thousands of names that were locally flagged as ineligible for jury service in prior years – including some names flagged more than a decade earlier, before the Jury Composition Reform Act and the Jury Composition Rule became the governing law. This labeling effectively eliminates these names from the lists provided by the Clerks Council. Moreover, the removal of these names is repeated year after year, even though the status of the persons removed may have changed in the interim to restore their eligibility for jury service. For example, a person flagged in the "legacy data" as having an undeliverable address might have updated his or her address with the Secretary of State or the Department of Driver Services; a

person with a felony conviction might have had his or her civil rights restored; a person who moved out of Fulton County may have moved back; and a person who was a non-citizen may have been naturalized. Indeed, to the extent the "legacy data" includes names inactivated for unspecified "statutory" reasons, most of the reasons for removing jurors under OCGA § 15-12-1.1, including status as a student, caregiver, home study teacher, or military service member, are not permanent in nature.

Instead of using locally carried-over "legacy data," we understand the Jury Composition Rule to require that the county submit a county exception list to the Clerks Council each year based only on data added or verified since the last county master jury list was provided to the county by the Council, so that the Council has the opportunity to scrutinize the data before names are purged. A county may not arrogate the Clerks Council's role by removing names itself from any list received from the Council, except based on information that the county has learned since its submission of that year's county exception list and consistent with statutory law and the provisions of the Rule.

Our conclusion on this point leaves room for a county to maintain temporary records between the submissions of its county exception lists from

34

year to year and to excuse, defer, or inactivate names on the Council's most recent county master jury list based on those temporary records where doing so is authorized by statute and the Rule, including temporary excusals and deferrals under OCGA § 15-12-1.1 and temporary deferrals for prior jury service. See JCR ¶¶ 6-7. However, any names *permanently* excused or inactivated should be included in the next year's county exception list so that the Council can purge those names from the next year's county master jury list in accordance with Appendix A of the Rule.[18] A county must not use its temporary records on a multi-year basis — there should be no long-term "legacy data" — and any names of jurors only *temporarily* deferred or excused should be identified in such a way that their eligibility is restored at the appropriate time.[19]

(c) The county's third obvious violation of the Jury Composition Rule involves the elimination of potential duplicate records. Since July 1, 2013, the

---

[18] The county exception list must also include some names that are indefinitely excused or deferred, such as persons with undeliverable addresses.

[19] As discussed in Division 3 above, Fulton County's vendor may also have done a poor job at times even under the protocols it was using, as suggested by the spot-checks of the county's 2013 and 2014 jury lists that Ricks's expert did, which found him and his brother(s) inactivated when they were in fact eligible to serve. However, the record is devoid of evidence as to whether similar errors exist elsewhere in the lists, and so we do not rely on those results in reaching our decision. We note, however, that such anomalies should self-correct once Fulton County's jury management system is altered to comply with the Rule.

Rule has directed the Clerks Council to purge potential duplicate records from jury lists, to do so using the very specific and technical process set forth in Appendix A, and to certify to this Court that there has been compliance with the required process. That process balances the competing interests in eliminating truly duplicate records and preserving entries that appear similar to one another but in fact relate to different individual citizens entitled to serve on juries. Fulton County's vendor takes the Council's county master jury list that has already been purged by the Council using the process prescribed by the Rule, merges it with the county's "legacy data," and then uses its own process to eliminate purported duplicates.

The record contains no evidence regarding the details of the vendor's process, and the responsible county officials were unaware of the details. But the record shows that the vendor has never even seen the current Rule prescribing the specific authorized process for identifying and purging duplicates; that the local jury management orders that the vendor has seen contain directions for purging duplicates that were drawn from a long-expired version of the Rule that granted counties *temporary* authority from February to June 2013 to eliminate presumed duplicates using a different method than the

one now in the Rule for the Clerks Council alone to apply; that the vendor's process resulted in the inactivation as "duplicates" of more than 38,000 names appearing on the Council's July 2013 county master jury list and of exactly 8,000 names appearing on the Council's July 2014 list; and that the vendor is continuing to use its process on the lists received annually from the Council.[20]

We hold that the current Jury Composition Rule does not authorize Fulton County or its vendor to attempt to eliminate duplicates from the county master jury lists provided by the Clerks Council. The trial court deemed the county's process "appropriate" because the Council's 2013 and 2014 lists included a number of names that exceeded the number of adults in the county as reported in the 2010 decennial census by a higher percentage than the county's final lists created by its vendor. The factual record underlying that conclusion is incomplete because of the limited testimony presented at the hearings; moreover, as we have noted above, the percentages reflect more favorably on the Clerks Council's lists when compared to the most recent annual census estimates.

---

[20] To the extent that the trial court's orders suggest that the county's vendor was provided with and followed the process contained in the current version of the Rule, that finding is clearly erroneous.

But putting those points aside, we reiterate that the Rule's highly specific process for eliminating potential duplicates was designed to balance the competing interests involved in identifying and purging duplicate records. The cost of sending two summonses to the same juror must be weighed against the cost of eligible jurors not being called for service because their identifying information is similar to that of other jurors. Based on considerable input from many sources, the specific process prescribed in the current Rule strikes that balance, and the Rule delegates the duty for engaging in that process exclusively to the Clerks Council. If Fulton County or other counties believe that the Rule is not working as well as it might, they may ask for the Rule to be revised or temporarily suspended as was done for the period from February 13 to June 30, 2013. But a county may not simply disregard the mandates of the Rule.

(d) The record also shows that Fulton County's vendor improperly engages, as the local jury management orders direct it to do, in efforts to inactivate names on the Clerks Council's county master jury list associated with addresses that the vendor concludes are undeliverable based on its submission of all of the addresses to the National Change of Address database. As described above, the Rule clearly delegates such wholesale, automated screening

38

for undeliverable addresses to the Council, which must follow a specific protocol. Indeed, the Rule reveals an intent to keep this aspect of the jury composition process close at hand by allowing the Clerks Council to use a NCOA vendor to assist in this task but explicitly prohibiting the vendor from outsourcing any of this work to others.

We hold that any such automated address screening conducted at the county level would contravene the Rule, because it would introduce the possibility that the process would be done incorrectly or inconsistently across the 159 counties, thus undermining the effect of the Council's efforts. The county may inactivate names on the annual county master jury list based on actual summons mail that is returned as undeliverable, where reasonable subsequent efforts fail to reveal a correct address; such names should then be included on the next county exception list. We recognize that, in a county with high resident mobility, as the year progresses a number of summonses may be sent to persons who now have undeliverable addresses. But if this defect is significant, the Rule should be thoughtfully amended to address it. The Rule cannot just be ignored.

(e) In defense of Fulton County's locally ordered manipulation of the

39

county master jury lists provided by the Clerks Council, the State relies in part on the portion of Paragraph 6 of the Rule which says that local jury officials "may excuse, defer, or inactivate names of jurors known to be ineligible or incompetent to serve." The State's argument is unpersuasive for several reasons. First, this authority of local jury clerks is expressly limited to "jurors known to be ineligible or incompetent to serve *pursuant to OCGA § 15-12-1.1*." (Emphasis added.) As discussed previously, OCGA § 15-12-1.1 provides a list of grounds for granting a prospective juror a permanent or temporary exemption from jury service, but none of those statutory grounds expressly concerns the following reasons for which Fulton County has permanently inactivated thousands of names on the Council's lists: place of residence; undeliverable address; status as a convicted felon; lack of citizenship; being deceased; being an appointed government official; having pending felony charges; being unable to speak or understand English; and being under 18 years old. The permanent inactivation of all such persons based on "legacy data" amassed before the county's last submission of its annual county exception list to the Council

40

cannot be justified based on Paragraph 6 of the Rule.[21] If such names are to be inactivated, that should be done by way of the next county exception list and by the sort of temporary record keeping discussed above.

The State also argues that the process its vendor uses merely "inactivates" names on the county master jury list rather than actually "deleting" those names as Paragraph 6 of the Rule prohibits. The trial court endorsed this argument, but we reject it. The real-world effect of electronically marking or flagging those names as inactivated is to wholly preclude those persons from being summoned for jury service. In this respect "inactivation" is the equivalent of "deletion" ("removal" and "purging" are other synonymous terms used in this context). The county cannot avoid the actual effect of its actions through the label it places on them.

(f) For these reasons, we conclude that the trial court erred in denying Ricks's motion to declare Fulton County's method of creating its jury lists to be in violation of the Jury Composition Rule and by not ensuring that the Rule is followed in Ricks's case. The trial court's June 25, 2014 and December 30,

_____

[21] We note that blanket disqualification of persons in some of these categories, such as persons with pending felony charges, may not be authorized by statutory law, the Rule, or case law, but we are not called on here to decide that issue.

41

2015 orders are therefore reversed.[22]

## Directions on Remand

6.     On remand, the trial court is directed to ensure that the prospective jurors for Ricks's trial are drawn from a list that is produced and managed in a manner that complies with OCGA § 15-12-40.1 and with the Jury Composition Rule as we have explained it above.  In particular, the trial court is directed to ensure the following:  that Fulton County and its officials and vendors do not add names to the annual county master jury list provided by the Clerks Council; that names are not deleted from or inactivated on the county master jury list based on those names being regarded by the county as duplicates; that names are not permanently inactivated on the Council's most recent county master jury list for any reason that has not become known to the county since it last submitted its annual county exception list to the Council; and that names are temporarily

---

[22] Ricks's motion was prospective in nature, in that it sought a pretrial order addressing the composition of the venire for his trial jury.  In this posture, the State's contention that any errors in the county's compliance with the Jury Composition Rule are harmless misses the point of interim review, which is to avoid even arguably reversible errors in death penalty trials.  See OCGA § 17-10-35.1 (a); UAP Rules I (A) (2), II (G).  We need not address whether such defects actually would be deemed reversible or prejudicial error on appeal from a conviction.  Cf. Young v. State, 290 Ga. 392, 393-395 (721 SE2d 855) (2012); Cobb v. State, 244 Ga. 344, 348 (260 SE2d 60) (1979).  See also Rosser v. State, 284 Ga. 335, 337 (667 SE2d 62) (2008); Pulliam v. Balkcom, 245 Ga. 99, 101-102 (263 SE2d 123) (1980); OCGA § 9-14-42 (b).

inactivated on the county master jury list only for the reasons set forth in OCGA § 15-12-1.1 or for other valid reasons for which the Rule has not given the Council responsibility, such as jurors' recent service and non-statutory personal reasons justifying an individual juror's temporary excusal or deferral.

Judgment reversed and case remanded with direction. All the Justices concur.

Decided May 15, 2017.

Jury Composition Rule. Fulton Superior Court. Before Judge Russell.

Brad Gardner, Emily J. Gilbert, Christian G. Lamar, Kimberly A. Staten-Hayes, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, James G. Banks, Kevin C. Armstrong, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, for appellee.