**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1289. COOPER v. THE STATE.

COOMER, Judge.

Shay Patrick Cooper was convicted of one count of trafficking in illegal drugs and sentenced to 30 years in confinement. Cooper appeals his conviction arguing the trial court erred by not granting his motion challenging Tift County's method of selecting prospective jurors. Cooper further contends the trial court erred by not applying the rule of lenity to his sentence and by not granting his motion for mistrial after a witness testified to improper character evidence. For the reasons that follow, we affirm in part and remand for resentencing.

1. Cooper first argues the trial court erred in denying his challenge to Tift County's method of jury selection. Specifically, Cooper contends that Tift County failed to comply with the Georgia Supreme Court's Jury Composition Rule (the "Jury

Rule")[1] in the following three ways: (1) the clerk/vendor made no effort to check the addresses for undeliverable returned summonses; (2) the clerk improperly removed jurors from the venire; and (3) the vendor/clerk operated under an outdated local order.

In support of his argument, Cooper relies on our Supreme Court's holding in *Ricks v. State*, 301 Ga. 171, 173-174 (1) (800 SE2d 307) (2017). In *Ricks*, our Supreme Court reversed a trial court's order denying a defendant's claim that the list from which Fulton County jurors were summoned was produced in a manner that violated the Jury Rule. 301 Ga. at 172. The Supreme Court found that instead of choosing venires as provided under the Jury Rule, the county produced its own lists created by its vendor based on outdated guidelines from a local jury management order. See *id*. at 179 (3) (a). The Supreme Court further noted that the testimony at

---

[1] The full text of the current Rule and its Appendix A may be found on the Georgia Supreme Court's website. See http://www.gasupreme.us/wp-content/uploads/2019/04/JURY-COMPOSITION-RULE_2019_04_11.pdf. Our Supreme Court adopted the Jury Rule to effectuate the Jury Composition Reform Act of 2011 ("the Act"), Ga. L. 2011, p. 59 which replaced the previous jury composition process for each of Georgia's 159 counties. See *Ricks v. State*, 301 Ga. 171, 173 (1) (800 SE2d 307) (2017). The Act, which gave centralized responsibility for preparing each county's master jury list to the Council of Superior Court Clerks, required that the Council provide the master jury list on July 1 each year, and that each county's jury clerk "choose a random list of persons from the county master jury list to comprise the venire." *Id*.

the evidentiary hearing regarding how the county constructs its jury lists "was uncertain and incomplete" and that the county's jury clerk and court administrator were not aware of the details of the county's computerized jury selection system. See *id*. at 179 (3). The Supreme Court ultimately held that Fulton County had violated several aspects of the Jury Rule by allowing its vendor to use "legacy data" to add and remove names from its master jury lists, to eliminate potential duplicate records, and to inactivate names on the master jury list that it concluded were undeliverable based on the submission of all the addresses to the National Change of Address database. See *id*. at 188-193 (5) (a)-(e). We disagree with Cooper's argument and find that the facts outlined in *Ricks* are distinguishable from those presented here.

In the present case, the trial court held an evidentiary hearing on Cooper's motion challenging Tift County's method of selecting jurors at which Bill Bennett, the jury vendor contracted by Tift County to maintain the county's jury box database, testified regarding the procedures and methods used by the county to select and maintain its jury database. Bennett testified that he was aware of the Jury Rule and familiar with the Georgia Supreme Court's ruling in *Ricks v. State*. Specifically, Bennett testified regarding the process Tift County uses to obtain and maintain its jury box database, and that Tift County's method of selecting jurors was in

3

compliance with the Jury Rule and applicable state law. Bennett explained the jury selection process and testified that after the Council of Superior Court Clerks (the "Council") obtains a list of registered voters from the Secretary of State's office and a list of licensed drivers from the Department of Driver Services, the Council combines those two lists and purges the duplicates using a probabilistic matching algorithm. The results of combining both lists is the data that becomes the jury box for Tift County. As of the date of the hearing, Tift County's jury database contained 32,001 records (the "master jury list").

Bennett also testified that as the county's vendor, his company downloads the county's master jury list directly from the Council's server and that there are "[n]o legacy data, no duplication, no addition or deletions at all to that database that we download from the Council as required by the Jury Composition Act of 2011." Bennett stated that as individuals are summoned for jury duty, each time a person is excused or inactivated from jury service as allowed by the Jury Rule (e.g. person is a felon, summons returned as undeliverable, person moved out of county, person is over 70, etc.), the county clerk signs an affidavit to that effect and that information is later transmitted to the Council for use in compiling the master jury lists for the following year. See OCGA § 15-12-1.1 Bennett stated that Tift County's exemption

4

list does not permanently delete anyone from the master jury list, but instead allows his company to temporarily inactivate a person until the Council investigates that individual's status further. Once Bennett's company receives orders from the court requesting jurors for a term, jurors are randomly selected from the county's master jury list.

(a) *Undeliverable Address*

Cooper contends that Tift County violated the Jury Rule by not making more of an effort to find the correct address for those summonses that are returned as undeliverable. However, Cooper does not identify what effort the Jury Rule requires on the part of a county clerk when a summons is returned as undeliverable. Section 5 (h) of the Jury Rule provides that

> A clerk may subject the county master list, or lists of jurors selected for summoning, to processing performed by an authorized United States Postal Service ("USPS") National Change of Address ("NCOA") service provider.

However, there is no requirement that the county clerk do so or that failure to do so is tantamount to a violation of the Jury Rule.

At the evidentiary hearing, the county clerk, Clay Pate, testified that after he receives the list of undeliverable summonses from Bennett, he takes those names off

the list for that trial week only and keeps a record of them in his office. Even though he stated that he had not submitted the names of the undeliverable summonses as part of the county exemption list to Bennett as of the date of the hearing, the Jury Rule does not specify a time frame for which this task must be done. Although *Ricks* states that "[t]he county may inactivate names on the annual county master jury list based on actual summons mail that is returned as undeliverable, where reasonable subsequent efforts fail to reveal a correct address[,]" neither the Supreme Court nor the Jury Rule explain what effort the county must expend to reveal a correct address. *Ricks*, 301 Ga. at 192 (5) (d). Aside from submitting those names in the county exception list to the Council, it does not appear the Jury Rule requires additional action. Accordingly, we find no error.

(b) Cooper next contends the county clerk improperly removed jurors from the venire. This argument is belied by the record. OCGA § 15-12-1.1 allows for county clerks to have the authority to defer, excuse, or inactivate jurors based on certain criteria. Section 5 (f)-(g) of the Jury Rule provides that

> In accordance with a local jury management court order, a clerk may excuse or defer a juror: (i) Pursuant to OCGA § 15-12-1.1; . . . (iii) Determined by the clerk as having an address that is undeliverable.

6

A clerk may inactivate a juror: (i) Who is ineligible due to permanent mental or physical disability; (ii) Who is 70 years of age or older and has been granted inactivation as the result of his or her age; (iii) Who is identified by the clerk as being deceased; (iv) Who is identified by the clerk as ineligible due to having been declared mentally incompetent by order of a court.

The Jury Rule further

directs the Clerks Council to purge names contained in the county exception list that each county provides in March of each year, which includes records of persons who have been permanently excused or inactivated by the local court due to a mental or physical disability; persons over 70 who have requested permanent excusal; and persons identified by the local jury clerk as deceased, as convicted felons whose civil rights have not been restored, as individuals formally declared to be mentally incompetent, as having undeliverable addresses after reasonable efforts to locate such persons, as non-residents of the county, or as non-citizens.

*Ricks*, 301 Ga. at 189 (5).

At the evidentiary hearing, Bennett testified that jurors are temporarily inactivated from the master jury list when jury services notifies his company that the juror is a felon, has moved out of the county, the summons was returned undeliverable, the juror files an over 70 affidavit, the juror is a student, or the juror

7

has an illness that will prevent jury service. Inactivated jurors are not deleted from the master jury list, but their information is provided to the Council who then determines the status of the juror. Bennett testified that all of Tift County's temporary inactivations were based on exemptions allowable under OCGA § 15-12-1.1. Unlike *Ricks*, where the vendor would inactivate names based on its submission of addresses to the National Change of Address database without following the specific protocol outlined in the Jury Rule, here the process of inactivating names from the jury lists complies with the guidelines expressed in the rule. See *Ricks*, 301 Ga. 192 (5) (d) ("The county may inactivate names on the annual county master jury list based on actual summons mail that is returned as undeliverable[.]"). Thus, we find no error.

(c) *Local Order*

Cooper next argues that Tift County failed to comply with the Jury Rule because it operated under an outdated local order. We disagree. At the evidentiary hearing, Bennett testified that Tift County's procedures for maintaining its master jury list were in full compliance with the Jury Rule, and that prior to the Jury Rule's existence, the procedures the county used as early as the year 2000 were compliant with the current Rule. Bennett stated that the local order Tift County operated under did not change the county's procedures that were being used prior to the local order

issued in June 2017, and that the June 2017 local order only clarified the county's procedures following the *Ricks* case, because there "became a need in the counties to put it in writing and clarify, you know, what we're doing. [The local order] didn't change anything that we were doing, you know, prior to that. . . . That [local order] was more of a clarification order than anything else." Accordingly, we find no error.

2. Cooper next argues the rule of lenity requires that he be sentenced under OCGA § 16-13-30 (c) (1) instead of OCGA § 16-13-31 (b). This argument lacks merit.

"As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." *Mitchell v. State*, 343 Ga. App. 116, 117 (806 SE2d 226) (2017) (citation omitted). "The rule of lenity . . . ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment." *Gordon v. State*, 334 Ga. App. 633, 634 (780 SE2d 376) (2015) (footnote and punctuation omitted). "However, the rule does not apply when the statutory provisions are unambiguous." *Banta v.*

9

*State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007) (citation omitted). We find nothing in OCGA § 16-13-31 renders it ambiguous, and no ambiguity is created by the existence of OCGA § 16-13-30.

On June 26, 2015, Cooper was arrested following a traffic stop where officers found "a large amount of a brown off white powder substance."[2] Cooper was later indicted for trafficking in illegal drugs pursuant to OCGA § 16-13-31 (b) (2) (2015) which provides,

> Any person who sells, manufactures, delivers, brings into this state, or has possession of four grams or more of any morphine or opium or any salt, isomer, or salt of an isomer thereof, including heroin, as described in Schedules I and II, or four grams or more of any mixture containing any such substance in violation of this article commits the felony offense of trafficking in illegal drugs and, upon conviction thereof, shall be punished as follows: . . . If the quantity of such substances involved is 14 grams or more, but less than 28 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of ten years and shall pay a fine of $100,000.00[.]

OCGA § 16-13-30 (c) provides

---

[2] The substance was found in Cooper's six year old son's possession after Cooper and his son were asked to exit the vehicle. Cooper had given the substance to his son to hold.

10

Except as otherwise provided, any person who violates subsection (a) of this Code section with respect to a controlled substance in Schedule I or a narcotic drug in Schedule II shall be guilty of a felony and, upon conviction thereof, shall be punished as follows: (1) If the aggregate weight, including any mixture, is less than one gram of a solid substance, less than one milliliter of a liquid substance, or if the substance is placed onto a secondary medium with a combined weight of less than one gram, by imprisonment for not less than one nor more than three years[.]

Cooper's indictment read as follows:

The Grand Jurors aforesaid, on their oaths aforesaid, in the name and behalf of the citizens of Georgia, charge and accuse Shay Patrick Cooper with the offense of TRAFFICKING IN ILLEGAL DRUGS for that said accused in the County of Tift, on or about the 26th day of June, 2015, did, then and there, unlawfully possess more than 04 grams of heroin, a schedule I controlled substance, in violation of the Georgia Controlled Substances Act, in violation of OCGA § 16-13-31, contrary to the laws of said State, the good order, peace and dignity thereof.

At trial, the crime lab technician who tested the substance officers collected at the time Cooper was arrested testified that her "analysis confirmed the presence of heroin with a net weight of the total sample to be 15.12 grams." Cooper argued the indictment read that he was in possession of 0.04 grams of heroin, however, Cooper

did not argue that there was anything wrong with the indictment and did not file a demurrer.[3] Accordingly, we conclude that there was no uncertainty as to which statute applied, and the rule of lenity was not implicated.

3. Lastly, Cooper contends trial court erred in denying his motion for mistrial after a witness for the State testified to improper character evidence. We disagree.

"A trial judge has broad discretion when ruling on a motion for mistrial, and his ruling will not be disturbed on appeal unless there has been a manifest abuse of discretion and a mistrial is essential to the preservation of the right to a fair trial." *Ivey v. State*, 284 Ga. App. 232, 233 (644 SE2d 169) (2007) (footnote omitted). Prior to trial, Cooper moved in limine to keep questions regarding Cooper's status as a parolee on probation at the time of the traffic stop out of evidence. Specifically, Cooper asked that the State's witness, the arresting officer, not testify about the discussion he had with Cooper regarding the terms of his probation and parole, and that the portions of the dash cam video of the arrest in which that discussion was recorded not be played for the jury. The State agreed and volunteered to mute or skip

---

[3] While it is unclear from the photocopy of the indictment in the record whether it reads .04 or 04 grams, our analysis of the outcome of this issue is unchanged.

any portion of the dash camera video of the arrest that includes discussion about Cooper's probation or parole terms.

At trial, during the State's direct examination of the arresting officer, the following exchange occurred:

The State: Okay. And was Mr. Cooper able to provide you his insurance and license?

Officer: He was.

The State: And then what happened after that?

Officer: At that time, I spoke with Mr. Cooper for a few minutes while waiting on a secondary officer to arrive. He was nervous. His hands were shaking.

The State: When you say he - - I'm just going to stop you for a minute.

Officer: Mr. Cooper.

The State: Okay, Cooper, yes, sir. Continue, thank you.

Officer: I asked him if there was anything illegal in the vehicle. He said there was not. Requested - - well, prior to that, I asked if he was on probation or parole or anything.

The State: Without getting into that, sir - -

Defense Counsel: Your Honor, we object to that testimony; and we've got to make a motion outside the presence of the jury.

Following the removal of the jury from the courtroom, Cooper moved for a mistrial. The State argued that because the witness did not go into to whether Cooper was on parole or probation, the trial court could instruct the jury to disregard the last question since there was no answer given by the witness. The trial court denied the motion and gave a curative instruction regarding the arresting officer's statement.

"When determining whether the trial court abused its discretion, we consider the statement itself, other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety." *Wynn v. State*, 332 Ga. App. 429, 434 (2) (773 SE2d 393) (2015) (citation omitted). "Furthermore, we have held that curative instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts." *Brewer v. State*, 301 Ga. 819, 820 (2) (804 SE2d 410) (2017) (citation and punctuation omitted). Considering all of these factors, we conclude that the trial court did not abuse its discretion in denying Cooper's motion for mistrial.

4. We note that when entering the sentence pronouncement by the trial court on the final disposition form, the court clerk indicated that Cooper was sentenced as a recidivist pursuant to OCGA § 17-10-7 (a) to serve 30 years without the possibility of parole. However, our review of the transcript from Cooper's sentencing hearing reveals that the when the trial court made its oral pronouncement of Cooper's sentence, it stated that Cooper would be sentenced as a recidivist pursuant to OCGA § 17-10-7 (c). OCGA § 17-10-7 (a), (c) pertinently provides:

> [A]ny person who, after having been convicted of a felony offense . . . commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he . . . stands convicted"; but the "trial judge may . . . probate or suspend the maximum sentence prescribed for the offense. . . . [A]ny person who, after having been convicted under the laws of this state for three felonies . . . , commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Thus, it appears the final disposition form reflects a scrivener's error and does not comport with the trial court's clear intention to sentence Cooper under subsection (c).

15

We therefore remand the case to the trial court to correct the error. See *Manley v. State*, 287 Ga. App. 358, 360 (3) (651 SE2d 453) (2007) ("[W]hen there is a scrivener's error, the remedy is to remand the case for the trial court to correct the error." (footnote omitted)); *Chaney v. State*, 281 Ga. 481, 483 (2) (640 SE2d 37) (2007) ("[T]he sentence must be corrected to speak the truth." (citations omitted)).

*Judgment affirmed in part and case remanded with direction. Doyle, P. J., and Markle, J., concur*.