310 Ga. 180
FINAL COPY

S20A0781.  HILL v. THE STATE.

ELLINGTON, Justice.

After Christina and Marshall Wellington were unable to pay a drug debt, Otis Hill shot them. Christina died; Marshall survived but lost an eye. Hill and Aviance Marshall ("Aviance"), who drove Hill and the Wellingtons to the location of the shooting, were charged with malice murder, attempted murder, kidnapping, and related offenses. Hill was convicted of kidnapping and murdering Christina, kidnapping, battering, and attempting to murder Marshall, and a weapons charge.[1] On appeal, Hill contends that the

---

[1] The crimes occurred on August 22, 2013. A Fulton County grand jury returned an indictment on November 22, 2013, charging Hill and Aviance with malice murder (Count 1), felony murder predicated on the kidnapping and aggravated assault against Christina (Counts 2 and 3), attempted murder (Count 4), kidnapping against Christina and Marshall (Counts 5 and 6), aggravated assault against Christina and Marshall (Counts 7 and 8), aggravated battery against Marshall (Count 9), and possession of a handgun during the commission of a felony (Count 10). At a November 2014 jury trial of Hill alone, he was found guilty on all counts. By judgment entered on November 26, 2014, the trial court sentenced Hill to life imprisonment without parole for malice murder and kidnapping (Counts 1, 5, and 6), 30 years in

evidence was insufficient as to kidnapping. In addition, Hill contends that the trial court erred in using a deficient master jury list; in failing to determine whether a juror was proficient in English; in instructing the jury regarding note taking; in admitting evidence of cell site location information, the effects of cocaine on memory, and witness intimidation; in excluding evidence of the maximum penalty Aviance faced; in instructing the jury regarding the reasonable doubt standard; and in denying his motion for a new trial on the general grounds. Hill also claims he received ineffective assistance of counsel. For the reasons explained below, we affirm, except that we vacate in part to correct sentencing errors.

---

prison for attempted murder (Count 4), 20 years in prison for aggravated battery (Count 9), and five years in prison for possession of a handgun during the commission of a felony (Count 10). The judgment indicated that the felony murder counts merged with the murder conviction, although they were actually vacated by operation of law. See *Bradley v. State*, 305 Ga. 857, 858 n.1 (828 SE2d 322) (2019). Count 7 merged with Count 1, and Count 8 merged with Count 9. No sentence was authorized for Counts 8 and 9, and we have corrected those errors in Division 13, infra. Hill filed a timely motion for a new trial, which he amended on December 7, 2016, June 21, 2017, December 28, 2017, and February 21, 2018. After a hearing on April 17, 2018, the trial court denied Hill's motion for a new trial on November 2, 2018. Hill filed a timely notice of appeal, and his appeal was docketed in this Court on January 27, 2020, to the April 2020 term and submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence showed the following. The Wellingtons traveled to Georgia in August 2013 from their home in North Carolina so that Christina could obtain medical treatment. The Wellingtons both used cocaine regularly, and they met Hill and bought drugs from him a few times.

Early on the afternoon of August 22, the Wellingtons obtained about $200 worth of cocaine from Hill and consumed it in their room at the Sunset Lodge hotel near Decatur. Early that evening, Hill and his companion, Aviance, went to the Wellingtons' room. Hill demanded to be paid for the drugs he had provided. The Wellingtons said that they could get him money the next day, but Hill pressed them to pay the debt immediately. He pulled a 9mm handgun and cocked it. At one point, Hill pressed the gun against Marshall's eye and repeatedly said that someone was going to die. After consulting with each other, the Wellingtons proposed that Hill take them out panhandling. Marshall told Hill that Christina's panhandling skills were "great" and she often made $4,000 in a month. Eventually Hill agreed to the plan. Marshall testified that he and his wife got in the

3

car to go panhandling "not [of their] own will" but only to avoid the threat of death and that Hill "controlled everything."

The foursome left the Sunset Lodge, with Aviance driving. They went to a large shopping center, and Christina approached people in front of the Walmart, then at the gas station, and then near a Checkers restaurant. Christina succeeded in getting $20 or less, so the plan was abandoned for the evening. Marshall estimated that it was about 10:30 p.m. at that point.

Hill told the Wellingtons that he wanted them to go somewhere with him. After they headed toward Stone Mountain on the interstate, Hill directed Aviance to take a series of turns and then to stop when they were on McClure Road, a narrow gravel road off South Fulton Parkway in Union City, with no lights and no houses. Aviance stopped the car, and Hill told the Wellingtons to get out because they were going to walk back to Atlanta. After they walked a bit back toward the main road, the passenger side door opened, activating the car's interior lights, and Marshall saw Hill step out and raise the gun. The Wellingtons tried to run away, but Marshall

4

was hit in the back and then in the leg. Then Hill shot Christina several times. Hill went back to the car and opened the door. Marshall heard the sound of a magazine clip being taken out of a gun and a clip being put in. Hill walked back to where Marshall was lying and shot him in the face. Hill got back into the car and left with Aviance.

The Wellingtons were discovered the next morning by a county work crew on McClure Road. Christina had died on the scene, with multiple gunshot wounds to her head and back. Marshall's injuries included a shattered femur and a ruptured eye that could not be surgically repaired.

Marshall was taken to Grady Hospital, and the lead investigator spoke with him briefly before he was taken into surgery. Marshall told the investigator that he had been shot by "Gagg," whom he described as having a tattoo under his eye and wearing a blue-and-white polo shirt and blue cargo shorts. Marshall said that "Gagg" had told him that he was from Miami and was 32 years old. Marshall told the investigator that he had seen "Gagg" as a contact

in the Verizon cell phone he shared with his wife, and he gave the investigator the phone number. He told the investigator that there was a car involved, which was driven by a woman.

The investigator obtained the Wellingtons' phone records and saw several recent communications with a number having a Miami area code. The investigator determined that the number was associated with a Sprint account and learned from Sprint that the customer for the account was "Gage Hill" and the billing address was a Miami address. An online investigation tool generated a list of people possibly associated with the Sprint account's billing address, including Hill and Aviance. The officer obtained Hill's birthdate — he was 32 years old — and driver's license photo and Social Security number. Cell phone location data showed that the phone associated with the Gage Hill account was within seven miles of the crime scene shortly after 11:00 p.m. on the night of the crimes.

The investigator prepared a photographic lineup that included Hill's photo and showed it to Marshall, who immediately identified Hill as the shooter. A detective obtained an arrest warrant for Hill.

In a second photographic lineup, Marshall identified Aviance as the woman who drove the car that night.

Aviance testified against Hill as follows. Aviance had an on-and-off relationship with Hill since high school, Hill's nickname was Gage, and they had a young child together. He had a tattoo of her nickname, "Sunkist," on his face. When Hill was not with her, he lived with Ashley Williams. On the day of the crimes, Aviance asked Hill to repay her money he had borrowed, because she needed to give her mother money for rent. Hill said he would collect money he was owed for drugs. He called Christina, who said she was trying to get money from her mother or her sister, who were out of state. Hill was upset at getting "the runaround." Aviance drove Hill in her mother's silver Jetta to the Wellingtons' hotel, after stopping to drop off their son at a friend's apartment. Hill pointed a gun at Marshall's eye and said, "y'all need to get the money like now." The Wellingtons offered to panhandle and convinced Hill by telling him that Christina had made a lot of money like that before, she was good at it, and "basically that's how they lived." After the panhandling effort was

unsuccessful, Hill had Aviance drive on the interstate and exit at South Fulton Parkway. She knew that Williams lived off of South Fulton Parkway, so she assumed Hill wanted to be dropped off at Williams's house. Hill instead directed her in taking a few turns until they got to a dark gravel road that was bordered only by trees. Hill told the Wellingtons to get out, that they were going to walk back. Aviance started driving back toward the main road when Hill told her to stop. He got out of the car, and she saw his arm come up and heard about ten gunshots. Hill walked back to the car and got something out of the door pocket. Aviance heard another shot, then Hill got back in the car and told her to go.

Williams testified as follows. In August 2013, after five years of dating on and off, she and Hill, whose nickname was Gage, were engaged and living together. Hill used the Miami phone number, and they called and exchanged text messages frequently. When Williams got home from work on August 27, she was met by a SWAT team with an arrest warrant for Hill. Williams consented to them going into her house, and they found Hill hiding in a closet and

8

arrested him. Officers found a blue-and-white polo shirt and blue cargo shorts on the floor in the bathroom. The next day, Williams found an empty magazine for a 9mm handgun under a Miami Dolphins beach towel in the closet of the bedroom she shared with Hill; she called investigators, who collected the gun magazine.

The lead investigator testified about a statement Hill gave after waiving his right to remain silent. Hill told the investigator that he had sold about $300 worth of crack cocaine to Christina and that he had gone to collect that money because he needed it to help Aviance pay for her rent. He said that he picked up the Wellingtons at the hotel and drove them around to a Walmart and some gas stations to panhandle. Hill said that the Wellingtons only managed to get about $15 panhandling. Hill said the reason they ended up in Union City is because he was going to make them walk back to Atlanta to teach them a lesson. He admitted that he made Aviance drive to Union City, and he told the investigator to leave her out of it because she had "nothing to do with it." Hill denied having a gun and said that he had "been drinking all day" and was drunk, adding,

"I don't remember killing anybody. I don't remember shooting anybody."

1. (a) Hill does not challenge the sufficiency of the evidence presented at his trial as to malice murder (Count 1), attempted murder (Count 4), aggravated battery (Count 9), and possession of a handgun during the commission of a felony (Count 10). Nevertheless, as has been our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Hill was guilty of these crimes. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

(b) Hill contends that the evidence showed that the Wellingtons willingly went with him and Aviance to go panhandling, that they never asked to be let go, and that they became afraid for

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. __, __ (4) (846 SE2d 83) (2020). The Court began assigning cases to the December Term on August 3, 2020.

the first time when he told them to get out of the car just before the shooting. Hill argues that there was no evidence that they were abducted or held against their will and that, as a result, the evidence was insufficient to authorize convictions for kidnapping (Counts 5 and 6).

OCGA § 16-5-40 (a) provides: "A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." The record shows that Hill came into the Wellingtons' motel room, demanded money, threatened their lives, and cocked a handgun and pressed it against Marshall's eye. Marshall testified that he and his wife went with Hill to go panhandling against their will and only to avoid being killed by Hill. The evidence was sufficient for a rational trier of fact to find Hill guilty of kidnapping. See *Jackson*, 443 U. S. at 319 (III) (B); *Smith v. State*, 294 Ga. App. 692, 696 (1) (b) (670 SE2d 191) (2008); *Smith v. State*, 250 Ga. App. 465, 469 (5) (552 SE2d 468) (2001).

2. Hill contends that, at the time of his trial in November 2014,

Fulton County's method of removing jurors from the county master jury list violated the Jury Composition Rule, specifically by removing jurors based on legacy data or based on undeliverable mail, which disproportionately affects minority and lower-income jurors. Hill argues that, as a result, the jury pool did not represent a fair cross-section of the community, and he was thereby deprived of his right to due process of the law.

In *Ricks v. State*, 301 Ga. 171, 188-193 (5) (800 SE2d 307) (2017), this Court considered a pretrial challenge to Fulton County's master jury list, which the defendant claimed had been produced in a manner that violated the Jury Composition Rule that this Court adopted to effectuate the Jury Composition Reform Act of 2011, OCGA § 15-12-1 et seq. We held that the list from which Fulton County jurors were being summoned, including the period from July 2014 to June 2015, was produced in a manner that violated the Rule. We remanded the case with direction that the trial court ensure that the prospective jurors for the defendant's trial be drawn from a list produced and managed in a manner that complied with OCGA § 15-

12

12-40.1 and with the Jury Composition Rule. See *Ricks*, 301 Ga. at 188-194 (5), (6). We noted that the defendant's motion "was prospective in nature, in that it sought a pretrial order addressing the composition of the venire for his trial jury," and we did not address a question that was not then before us — "whether such defects actually would be deemed reversible or prejudicial error on appeal from a conviction." Id. at 193 (5) n.22.

Hill challenged the master jury list for the first time in his third amended motion for a new trial. The procedure in Georgia, however, "has long required a criminal defendant to raise a challenge to the jury lists at the time the jury is 'put upon him' or else he waives his right to object." *Young v. State*, 232 Ga. 285, 286 (206 SE2d 439) (1974) (citation omitted). Neither the Jury Composition Reform Act of 2011 nor the Jury Composition Rule relaxed that requirement. By waiting until after conviction to challenge the composition of the jury list, Hill waived any such challenge. See *McDonald v. State*, 296 Ga. 643, 649 (4) (770 SE2d 6) (2015) (Because the defendant made no challenge to the composition

of the jury array at trial, he waived any objection on appeal.); see also *Shotwell Mfg. Co. v. United States*, 371 U. S. 341, 362 (IV) (83 SCt 448, 9 LE2d 357) (1963) (A challenge to the method of selecting the petit jury panel on the basis that selection method failed to secure a fair cross-section of the population is waived when not made before trial.).

3. Hill contends that the trial court erred in preventing him from examining a prospective juror and in failing itself to question the juror to determine if the juror was qualified to serve in light of his self-declared language barrier. If this Court determines that the error was not preserved, Hill contends that the trial court committed plain error and that his trial counsel was constitutionally ineffective for failing to preserve the error for review.

(a) *Waiver of disqualification.* The record shows that, during questions propounded by the trial court during voir dire, a prospective juror who was ultimately seated on the jury indicated that he had a hardship with serving on the jury. He stated, "I'm worried about the language, you know, some things I don't

14

understand." The court asked the juror whether he had taken the citizenship exam, and the juror replied that he had. Noting that the citizenship exam is given in English, the court moved on to questioning other jurors about their hardships. Later during voir dire, defense counsel attempted to follow up with the juror's potential "language issues." The court instructed counsel, "Don't ask that. Move on from there." Defense counsel did not object at that point or raise the purported language barrier again. Defense counsel did not move to strike the juror for cause or use a peremptory strike to remove him, nor did she object to the jury selected.

Because Hill did not make a request to strike the juror for cause, the issue was waived for ordinary appellate review. See *Veal v. State*, 301 Ga. 161, 163 (2) (800 SE2d 325) (2017); see also *Passmore v. State*, 274 Ga. 200, 202 (5) (552 SE2d 816) (2001) (Where the defendant failed to challenge a prospective juror for cause at trial, he did not preserve any issue as to the juror's disqualification.). And plain error review is not available for this issue because such review is

limited to the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), [and, f]or cases tried after January 1, 2013, with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the court. OCGA § 24-1-103 (d).

*Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (citations and punctuation omitted). This Court will not extend plain error analysis to other claims of error in the absence of a specific provision by the General Assembly. Id.

(b) *Ineffective assistance of counsel.* To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 695 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). If Hill fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland* test. See *DeLoach v. State*, 308 Ga. 283, 288 (2) (840 SE2d 396) (2020). "In

16

reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019) (citation omitted).

At the hearing on Hill's motion for a new trial, his trial counsel testified that she did not object because the trial judge indicated that he did not believe the juror was telling the truth about having trouble understanding English but was just trying to get out of jury duty. Counsel testified that, after observing the juror's demeanor and his ability to respond to the questions during voir dire, she also had the impression that the juror had been trying to get out of jury duty. Whether to strike a prospective juror who indicates a limited ability to understand legal proceedings in English is within the broad discretion of the trial court in qualifying a jury. See *Dockery v. State*, 287 Ga. 275, 276 (2) (695 SE2d 599) (2010); see also *Collins v. State*, 308 Ga. 608, 612 (3) (842 SE2d 811) (2020) ("Whether to strike a juror for cause lies within the sound discretion of the trial

17

judge, and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion." (citation and punctuation omitted)). Under the circumstances presented here, counsel reasonably believed that trying to have the juror removed for cause would be futile. And "[t]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020) (citation and punctuation omitted). These arguments present no basis for reversal.

4. Hill contends that his counsel was ineffective in failing to object to the court's instruction that the jurors could consider each other's notes. He argues that the evidence was insufficient to support the kidnapping charges and therefore the jury's unanimous guilty verdicts show that it is likely that jurors influenced each other by relying on each other's notes after being instructed to do so by the court.

Hill's characterization of the court's instructions is not supported by the record. Before trial, the court provided the jurors

18

with notepads and pencils and instructed the jurors that they were allowed, but not required, to take notes. The court instructed the jurors from the pattern jury instructions:[3]

> The notes you take are for your use only and are not to be shared with anyone until you begin deliberation with your fellow jurors. . . . It is the duty of each juror to recall the evidence. And while you may consider another juror's notes to refresh your memory, you should rely on your own recollection of the proceedings. Do not be influenced by the notes of other jurors unless their notes help you in determining your own independent recollection. Notes are not entitled to any greater weight than the recollection or impression of each juror as to what the evidence may have been.

Viewing the instructions as a whole, the trial court did not instruct the jurors to rely on each other's notes. Given that the instruction was not improper in the way claimed by Hill, he has not shown that counsel's performance in not objecting to it was deficient. See *Bridges v. State*, 286 Ga. 535, 538 (2) (690 SE2d 136) (2010).

5. Hill contends that the trial court erred in admitting the cell site location data which was obtained without a warrant and in the

---

[3] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 0.01.00 (4th ed. 2007, updated January 2020).

absence of exigent circumstances.[4]

Assuming without deciding that the trial court abused its discretion in admitting the challenged evidence,[5] any error was harmless and does not require reversal. When the admission of evidence is an "error of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." *McCord v. State*, 305 Ga. 318, 321 (2) (a) (825 SE2d 122) (2019) (citation and punctuation omitted). Here, the cell site location data was

---

[4] See *Carpenter v. United States*, __ U. S. __, __ n.3 (138 SCt 2206, 201 LE2d 507) (2018) (Generally the Fourth Amendment requires a warrant for the government to access an individual's cell site location information, at least where the government's request is for seven or more days of data. Warrantless searches of cell site records are authorized under circumstances when the exigencies of the situation make the needs of law enforcement sufficiently compelling that a warrantless search is objectively reasonable, including the need to protect individuals who are threatened with imminent harm.).

[5] At the time of Hill's 2014 trial, controlling precedent held that a search warrant was not required to obtain cell site location data. See *Reed v. State*, 307 Ga. 527, 535 (2) (b) (837 SE2d 272) (2019); *Walker v. State*, 306 Ga. 579, 583 (2) (a) (832 SE2d 420) (2019); see also *Smarr v. State*, 317 Ga. App. 584, 593-594 (3) (c) (732 SE2d 110) (2012).

cumulative of properly admitted evidence that placed Hill at the murder scene, including the testimony of the surviving victim, the testimony of Hill's accomplice, and Hill's own admitted pretrial statement, and the evidence of his guilt was overwhelming. The State carried its burden of showing that any error in admitting the evidence did not contribute to the verdict. See id.; *Mullins v. State*, 258 Ga. 734, 735 (2) (374 SE2d 530) (1988).

6. Hill contends that his trial counsel was ineffective in failing to ask for a curative instruction or mistrial after testimony that he contends was irrelevant and improper evidence of bad character that "painted [him] as someone who participated in a life-style that involved knowing how to cover up finger-prints."

On direct examination, Marshall described what happened in the hotel room before he and his wife left with Hill and Aviance to go panhandling. He testified that Hill came in the room, demanded to know where his money was, and pulled out a handgun. Marshall testified that he told Hill that they would try to repay, but Hill "wasn't really caring" and "kept saying somebody's going to die." The

21

prosecutor asked what Aviance was doing at that point. Marshall testified:

> She was over there on the chair because I remember [Hill] taking our phone, and she was wiping down everything that he basically touched. . . . She wiped the cell phone down. She was wiping all the table. I don't care where he put stuff, like she was wiping everything like they done this thing before.

Defense counsel objected and moved to strike the testimony as speculative. The trial court sustained the objection and instructed the jury to disregard the response. At the hearing on Hill's motion for a new trial, trial counsel testified that she thought the court's instruction sufficiently cured any negative implication and that she did not need to request an additional curative instruction or move for a mistrial.

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Billings v. State*, 293 Ga. 99, 106 (7) (745 SE2d 583) (2013) (citation and

22

punctuation omitted). Given these circumstances, Hill has not carried his burden of showing that defense counsel performed deficiently. Counsel objected to the testimony, and the trial court sustained the objection and gave an appropriate curative instruction. "Qualified jurors under oath are presumed to follow the instructions of the trial court." *Morris v. State*, 308 Ga. 520, 530 (4) (842 SE2d 45) (2020) (citation and punctuation omitted). Moreover, Hill has not shown that, under these circumstances, a mistrial would have been granted had counsel requested one. Because the trial court would have acted within its discretion in denying a motion for mistrial, the failure of Hill's trial counsel "to make a motion that the court was authorized to deny does not establish ineffective assistance by that counsel." *Billings*, 293 Ga. at 106 (7). See also *Allen v. State*, 277 Ga. 502, 503 (3) (a) (591 SE2d 784) (2004).

7. Hill contends that the trial court erred in refusing to permit his counsel to explore the potential penalties that Aviance avoided in exchange for her guilty plea.

On direct, Aviance testified that she had entered a guilty plea to one count of false imprisonment and had received a sentence of ten years in prison with the possibility of parole. On cross-examination of Aviance, defense counsel questioned her about her plea deal. Counsel asked if Aviance was aware that malice murder and felony murder carry life imprisonment, with or without parole, or death. The trial court called counsel to the bench. The conference was not transcribed, but, at the motion for new trial hearing, counsel testified that the judge would not allow her to go through the penalties for each charge because Hill faced the same charges, such that Aviance's testimony would also improperly put Hill's possible punishment before the jury.[6] After the bench conference, counsel questioned Aviance about each of the charges she faced, without

---

[6] In Georgia, trial courts, not juries, have sentencing responsibility "in all felony cases in which the death penalty [is] not sought." *Foster v. State*, 306 Ga. 587, 592 (2) (b) (832 SE2d 346) (2019) (citation omitted). For this reason, jurors in non-capital cases are routinely instructed that they are only concerned with the guilt or innocence of the defendant and they are not to concern themselves with punishment, and evidence regarding the defendant's potential sentence is not relevant. See id.; see also *Quintana v. State*, 276 Ga. 731, 734 (4) (583 SE2d 869) (2003); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.20 (4th ed. 2007, updated January 2020).

referring any further to maximum sentences. Counsel then asked Aviance about her motives for accepting the plea deal, and she testified that she did not want to be in prison for the rest of her life and wanted to be able to get out of prison so she could get back to her children.

"[E]ven if no charges were pending against a witness when he was interviewed or testified, a defendant must be allowed to cross-examine a witness about punishment that the witness may have avoided as a result of a deal with the State for his testimony in the prosecution of the defendant." *Williams v. State*, 292 Ga. 844, 846 (2) (742 SE2d 445) (2013). "It is clear that the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination." *Manley v. State*, 287 Ga. 338, 344 (2) (698 SE2d 301) (2010) (citation and punctuation omitted). See also *State v. Vogleson*, 275 Ga. 637, 640 (1) (571 SE2d 752) (2002) (It is an abuse of discretion to prevent defense counsel from questioning "a witness who is testifying for the State in exchange for a reduction in prison time about the witness's

belief concerning the amount of prison time [she] is avoiding by testifying against the defendant."). Even so, "trial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Manley*, 287 Ga. at 340 (2).

In this case, the trial court did not cut off all inquiry on the subject of the punishment Aviance may have avoided as a result of her deal with the State: on cross-examination she acknowledged that she had faced a potential sentence of life in prison, with or without parole, or death and that, pursuant to her deal with the State, she received a sentence of ten years with the possibility of parole. And defense counsel explored Aviance's incentive to cooperate with the State to minimize her separation from her children. We conclude that the trial court did not abuse its broad discretion in controlling cross-examination when it prevented Hill from eliciting the maximum sentence allowed for the charges

26

against Aviance other than murder. See *Watkins v. State*, 276 Ga. 578, 582 (3) (581 SE2d 23) (2003).

8. (a) Hill contends that the trial court erred in admitting his statement that a witness would not testify, which, he argues, intimated that he was involved in witness intimidation. He argues that the prejudicial impact of the statement substantially outweighed its probative value and, therefore, that the statement should have been excluded under OCGA § 24-4-403 ("Rule 403").[7]

Williams, Hill's fiancée, testified that Hill had a conversation with her "about individuals appearing at court." The prosecutor asked her to elaborate, and Williams began, "When the original date was set for —" Defense counsel objected, and the trial court sustained the objection. The prosecutor asked, "Without talking

---

[7] Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also OCGA §§ 24-4-401 ("relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); 24-4-402 ("[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules . . .").

about the specifics of any hearings, what was told to you by the defendant about someone appearing?" Defense counsel objected on the basis of relevance, since Hill was not charged with witness intimidation. The court overruled the objection, finding that the testimony went "to knowledge" and was more probative than prejudicial. Williams then testified, "[Hill] told me that he — he never mentioned his name, but he said that the witness was not going to show up at court."

It is not necessary to consider whether the admission of this statement was error because, pretermitting whether the statement was inadmissible character evidence, we conclude that any error in admitting it was harmless. "A nonconstitutional error is harmless if it is highly probable that the error did not contribute to the verdict." *Davenport v. State*, 309 Ga. __, __ (2) (846 SE2d 83) (2020) (citation and punctuation omitted). See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). In determining whether an alleged evidentiary error was harmless,

"we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." *Clarke v. State*, 308 Ga. 630, 634 (2) (842 SE2d 863) (2020) (citation and punctuation omitted). Here, given the strength of the evidence of Hill's guilt, we conclude that it is highly probable that the outcome of the trial would have been no different had the glancing reference to Hill saying some unnamed witness was not going to appear at trial been excluded. See id. Moreover, we have considered the cumulative effect of this presumed error along with the evidentiary error assumed in Division 5 and conclude that the combined prejudicial effect of the assumed evidentiary errors did not deprive Hill of his right to a fundamentally fair trial. See *Lofton v. State*, 309 Ga. 349, 367 (7) (846 SE2d 57) (2020); *State v. Lane*, 308 Ga. 10, 14-18 (1) (838 SE2d 808) (2020).

(b) Hill also contends that his trial counsel was ineffective in failing to object and move for mistrial after Williams testified that he said a witness was not going to appear. Immediately before Williams testified about the statement, Hill's counsel objected to

the evidence, and the trial court considered its relevance and prejudicial impact and decided to admit it. A redundant motion for a mistrial would have been fruitless and was not required to preserve his objection for appeal. Consequently, counsel's failure to move for a mistrial did not constitute deficient performance. See *Fleming v. State*, 306 Ga. 240, 251 (5) (e) (830 SE2d 129) (2019).

9. Hill contends that his trial counsel was ineffective in failing to object to the testimony of a forensic toxicologist on the basis that she was not qualified to testify regarding the effects of cocaine on a user's memory. He argues that he was prejudiced by the toxicologist's testimony, because the testimony bolstered the testimony of Marshall, who had consumed a quantity of cocaine before the shooting that injured him and killed his wife.

The record shows that, when the State asked the toxicologist about the effect of ingesting cocaine on a person's ability to recall events, the toxicologist testified that an inability to recall events is not common but that high doses of cocaine can cause hallucinations so that the person perceives and recalls an altered reality, instead

of what is actually there. At the motion for new trial hearing, Hill did not question trial counsel about her decision not to object to the toxicologist's testimony. Without trial counsel's testimony or some other evidence explaining the basis for her decisions, Hill cannot overcome the presumption that those decisions were strategic and, thus, cannot establish that counsel was ineffective. See *Leanos v. State*, 303 Ga. 666, 672 (2) (c) (iv) (814 SE2d 332) (2018); *Mitchell v. State*, 303 Ga. 491, 495 (3) (813 SE2d 367) (2018). Indeed, during closing argument, Hill's counsel used the testimony about drug-induced hallucinations as part of her argument that Marshall lacked credibility because of his drug use on the day of his wife's murder.

10. Hill contends that his trial counsel was ineffective in failing to object to the State's closing argument, which, he argues, "crossed the line" and amounted to personal and unprofessional attacks on defense counsel.

"Whether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's decision not to make an objection must be patently unreasonable to rise to the level of

deficient performance." *Smith v. State*, 296 Ga. 731, 735-736 (2) (b) (770 SE2d 610) (2015) (citations and punctuation omitted). See also *State v. Goff*, 308 Ga. 330, 334 (1) (840 SE2d 359) (2020) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Accordingly, a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it." (citation and punctuation omitted)). We have held, for example, that it can be a reasonable strategy for defense counsel to remain silent during closing argument and "allow the potentially inappropriate antics of the prosecutor to backfire against" the State. *Smith v. State*, 288 Ga. 348, 356 (10) (b) (703 SE2d 629) (2010). At the hearing on Hill's motion for a new trial, his trial counsel testified that the prosecutor was taking "a very aggressive position" and that defense counsel strategically opted not to object because she "wanted to be on the opposite side" of the State's aggressiveness, "to keep the jury liking [the defense]." Having reviewed the State's closing arguments in the

32

context of Hill's trial, we cannot say that counsel's decision to refrain from objecting in order to present a less aggressive tone to the jury was a strategy no reasonable lawyer would have chosen. Consequently, Hill's ineffectiveness claim fails. See *London v. State*, 308 Ga. 63, 69 (3) (838 SE2d 768) (2020); *Walker v. State*, 308 Ga. 33, 41-42 (3) (d) (838 SE2d 792) (2020); *Jackson v. State*, 306 Ga. 266, 276 (5) (c) (830 SE2d 99) (2019).

11. (a) Hill contends that the trial court committed plain error in instructing the jury regarding the level of proof required for conviction.[8] Specifically, he argues that a statement in the court's preliminary instruction that "the object of this trial is to discover the truth," and a statement in the court's final instruction that "[a] reasonable doubt is the doubt of a fair-minded, impartial juror, honestly seeking the truth[,]" allowed the jury to convict him based on a preponderance of the evidence standard, rather than on the

---

[8] See OCGA § 17-8-58 (b); *English v. State*, 300 Ga. 471, 473 (2) (796 SE2d 258) (2017) ("[U]nder OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions[ after failing to object at trial]." (citation and punctuation omitted)).

correct reasonable doubt standard. Hill did not object to these instructions at trial.

> To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*Clarke,* 308 Ga. at 637 (5) (citation and punctuation omitted). The Court need not analyze all of the elements of the plain error test when the appellant fails to establish one of them. See *State v. Herrera-Bustamante,* 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018). "An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." Id. (citation and punctuation omitted).

The two instructional fragments at issue are embedded in the pattern preliminary instructions and in the pattern instruction on the presumption of innocence, burden of proof, and reasonable doubt, respectively, which correctly emphasize the State's heavy

34

burden of proof.[9] The reasonable doubt instructions have been upheld by this Court.[10] Hill cites no controlling authority for the proposition that the instructions are erroneous because they briefly refer to discovering or seeking the truth. Consequently, he cannot show that giving the instructions constituted clear or obvious error. See *Herrera-Bustamante*, 304 Ga. at 264 (2) (b); *Williams v. State*, 304 Ga. 455, 459 (3) (818 SE2d 653) (2018).

(b) Hill contends that his trial counsel was ineffective in failing to object to the instructions that referred to discovering or seeking the truth, again arguing that the instructions allowed the jury to convict him based on a preponderance of the evidence standard, rather than on the correct reasonable doubt standard.

The objection Hill proposes would have advanced a novel theory under Georgia law. See Division 11 (a), supra. A criminal defense attorney does not perform deficiently, however, in failing

---

[9] Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 0.01.00 and 1.20.10 (4th ed. 2051, updated January 2020)

[10] See *Rucker v. State*, 270 Ga. 431, 433 (3) (510 SE2d 816) (1999); see also *Anderson v. State*, 286 Ga. 57, 60 (5) (685 SE2d 716) (2009) (urging trial courts "to hew closely to the pattern instruction on reasonable doubt").

to advance a novel legal theory. See *Sawyer v. State*, 308 Ga. 375, 383 (2) (a) (839 SE2d 582) (2020); *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019). Hill has not shown he received ineffective assistance of counsel.

12. Hill contends that the trial court abused its discretion in denying his motion for a new trial on the general grounds, because the judge who heard the motion, who had not presided over his trial, did not review the entire trial record but only read portions of the transcript selected by the attorneys. Hill argues that his case should be remanded so that the trial court can exercise its discretion as the "thirteenth juror" by considering whether to grant a new trial based on a review of the entire record. Because the record shows that Hill forfeited his request for such review, however, this claim of error fails.

The record shows that, after the successor judge convened the hearing on Hill's motion for a new trial, Hill called his sole witness, his trial counsel. Hill's post-conviction counsel and the prosecutor examined trial counsel, referring her to specific pages of the trial

36

transcript and asking about her reasons for objecting, or not objecting, to particular jury instructions, items of evidence, and argument. The successor judge then called for argument and pointed out that the parties had not provided to him the parts of the transcript that were referenced during examination of trial counsel. Hill's post-conviction counsel stated that, until the morning of the hearing, she expected the trial judge to hear the motion, and she offered to provide the successor judge with a full copy of the trial transcript. The judge stated that, due to the time constraints of his appointment as a senior judge, he did not anticipate reading the whole transcript and that he wanted to review the excerpts referenced during the hearing. Post-conviction counsel did not object to a ruling on the motion for a new trial that was not based on a review of the entire record, ask for a continuance, or ask that the original trial judge be assigned to hear the motion. Instead, counsel stated that, after the judge heard argument, she would work with the prosecutor to make copies of the portions of the transcript that the attorneys deemed "relevant" to Hill's motion.

37

As to the general grounds for a new trial, Hill's post-conviction counsel argued that, "especially with regards to the kidnapping charge[s,]" the jury's verdicts were contrary to the evidence and the principles of justice and equity and decidedly and strongly against the weight of the evidence, such that the judge could exercise his discretion as the thirteenth juror and grant a new trial.[11] Specifically, she argued that Marshall's testimony established that he and Christina willingly went with Hill, including to the location of the shooting, so there was no evidence of the asportation element of kidnapping. After a recess, the judge reconvened the hearing that afternoon to announce his decision. Again, Hill's post-conviction

---

[11] A trial court may grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity[,]" OCGA § 5-5-20, or "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21.

> When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." In exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.

*Wilkerson v. State*, 307 Ga. 574, 575 (837 SE2d 300) (2019) (citation and punctuation omitted).

counsel did not object to a ruling that was not based on a review of the entire record. The judge stated that he had reviewed the excerpts from the transcript that he had asked for, announced his decision to deny Hill's motion, and directed the State to prepare an order.

The day after the hearing, Hill filed an objection to the State's proposed order on the basis that it mischaracterized the judge's analysis of trial counsel's testimony with regard to his claims of ineffective assistance of counsel. Hill did not object, however, on the basis that the judge had not reviewed the entire transcript. Six months later, with a final ruling still pending, Hill filed an amended objection to the State's proposed order and attached an alternative proposed order. Hill's proposed order stated that, in his motion for a new trial, Hill challenged "the sufficiency of the evidence," but the proposed order did not mention the general grounds or reference OCGA §§ 5-5-20 and 5-5-21. The proposed order then stated that Hill's trial counsel had testified at the hearing and, "[a]fter considering the arguments of counsel and based upon the record," the motion for a new trial was denied on each and every ground. The

successor judge signed Hill's proposed order.

Given the circumstances presented here, we need not decide whether, as Hill contends, the successor judge, by ruling on Hill's motion for a new trial without first reviewing the entire trial transcript, erred in failing to exercise the discretion committed to the trial court under OCGA §§ 5-5-20 and 5-5-21. See *Holmes v. State,* 306 Ga. 524, 528 (2) (832 SE2d 392) (2019) (vacating order denying motion for new trial on the general grounds and remanding to the trial court because the record showed that the trial court failed to reweigh the evidence as the "thirteenth juror," as required under OCGA §§ 5-5-20 and 5-5-21). When Hill's post-conviction counsel argued at the hearing that the successor judge should grant a new trial on the general grounds, she knew that the judge planned to review only those portions of the trial transcript that counsel for the parties deemed relevant to resolving the motion for a new trial. And the proposed order counsel prepared for the court omitted the general grounds from the list of Hill's claims and from the court's ruling, and it indicated a sufficient review of the record. Through

these actions, Hill, through his counsel, waived any complaint that the judge failed to conduct a full general-grounds review of all of the evidence under OCGA §§ 5-5-20 and 5-5-21. See *Willis v. Bozeman*, 224 Ga. 729, 731 (5) (164 SE2d 841) (1968) (where defendant abandoned general grounds of a motion for new trial, appellate court would not address general grounds). See also *Vincent v. State*, 276 Ga. App. 415, 417 (3) (623 SE2d 255) (2005) (claim of error abandoned at hearing on defendant's motion for a new trial was not preserved for review on appeal); *Powell v. State*, 239 Ga. App. 780, 781 (3) (522 SE2d 244) (1999) (where defendant did not object at resentencing hearing to trial court's plan to resentence him on only one of three cases against him that were resolved in a single plea agreement, defendant waived any claim that trial court erred in letting stand sentences in the other two cases); *Noble v. State*, 220 Ga. App. 155, 157-158 (469 SE2d 307) (1996) (where defendant did not object to substitution of judges before sentencing, he waived right to imposition of sentence by trial judge). Because Hill has abandoned this claim of error, he is not entitled to have the case

41

remanded for general-grounds review.[12]

13. Although Hill does not raise the issue on appeal, we have identified two merger errors in his sentencing. Count 4 charged Hill with attempted murder by aiming a gun at Marshall's head and firing a bullet that struck his head, with intent to cause his death. Count 8 charged Hill with aggravated assault against Marshall by shooting him with a handgun. Count 9 charged Hill with aggravated battery by rendering Marshall's eye useless by shooting him with a handgun. Because there was no evidence that Hill committed aggravated assault in the manner alleged independent of the act which was intended to cause Marshall's death, the count of aggravated assault merged with the conviction for attempted murder for sentencing purposes. See *Miller v. State*, 309 Ga. __, __ (3) (847 SE2d 344) (2020) (When there is "no evidence to suggest the occurrence of an aggravated assault independent of the act which

---

[12] Although Hill failed to preserve his argument that the trial court erred in failing to review the entire trial transcript, we do not endorse the principle that a judge who did not preside over a trial can exercise his discretion as the thirteenth juror under OCGA §§ 5-5-20 and 5-5-21 without considering all of the evidence the 12 jurors saw and heard at trial.

caused the victim's death," a jury's guilty verdict on the aggravated assault merges as a matter of fact with the malice murder verdict for sentencing purposes. (citation and punctuation omitted)); *Kelley v. State*, 201 Ga. App. 343, 344 (1) (411 SE2d 276) (1991) (An aggravated assault conviction merged into a criminal attempt to commit murder conviction where both counts were based on allegations that the defendant stabbed the victim with a knife.). Likewise, because there was no evidence that Hill committed aggravated battery in the manner alleged independent of the act which was intended to cause Marshall's death, the count of aggravated battery merged with the conviction for attempted murder for sentencing purposes. See *Priester v. State*, 309 Ga. 330, 335 (3) (845 SE2d 683) (2020) (Aggravated battery conviction "merges into the greater offense of attempted murder when the crimes are predicated upon the same conduct."). Accordingly, we vacate Hill's convictions and sentences for aggravated assault and aggravated battery against Marshall (Counts 8 and 9).

*Judgment affirmed in part and vacated in part. All the Justices*

43

*concur, except Warren, J., not participating.*


Decided October 19, 2020.

Murder. Fulton Superior Court. Before Judge Brantley, Senior Judge.

*Law Firm of Shein & Brandenburg, Marcia G. Shein, Leigh S. Schrope*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.